# EXHIBIT A

21121909

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Sabita J. Soneji (SBN 224262)
Tycko & Zavareei LLP
1970 Broadway, Suite 1070
Oakland, CA 94612

TELEPHONE NO.: 510-254-6808    FAX NO.:
ATTORNEY FOR *(Name):* Plaintiff Lenay Johnson and Lamar Mosley, et al.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Alameda
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, 94612
BRANCH NAME: Rene C. Davidson Courthouse

CASE NAME:

*FOR COURT USE ONLY*

**FILED**
ALAMEDA COUNTY

JAN 2 8 2019

CLERK OF THE SUPERIOR COURT
By *Erica Baker*
ERICA BAKER, Deputy

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited ☐ Limited <br> (Amount (Amount <br> demanded demanded is <br> exceeds $25,000) $25,000 or less) | ☐ Counter ☐ Joinder <br> Filed with first appearance by defendant <br> (Cal. Rules of Court, rule 3.402) | R G 1 9 0 0 4 6 7 1 <br> JUDGE: <br> DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

**FAXED**

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☑ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☑ is ☐ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
  a. ☐ Large number of separately represented parties     d. ☐ Large number of witnesses
  b. ☑ Extensive motion practice raising difficult or novel     e. ☐ Coordination with related actions pending in one or more courts
    issues that will be time-consuming to resolve      in other counties, states, or countries, or in a federal court
  c. ☑ Substantial amount of documentary evidence     f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action *(specify):*  3
5. This case ☑ is ☐ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 1/28/2019

Sabita J. Soneji
_____
(TYPE OR PRINT NAME)            ▶            (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use <br> Judicial Council of California <br> CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; <br> Cal. Standards of Judicial Administration, std. 3.10 <br> www.courtinfo.ca.gov |
|---|---|---|

**CM-010**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

F. ADDENDUM TO CIVIL CASE COVER SHEET

*Unified Rules of the Superior Court of California, County of Alameda*

| Short Title: Lenay Johnson and Lamar Mosley v. Extra Space Storage, Inc. | Case Number: |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM

**THIS FORM IS REQUIRED IN ALL NEW UNLIMITED CIVIL CASE FILINGS IN THE
SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**

| | |
|---|---|
| [ √ ] Oakland, Rene C. Davidson Alameda County Courthouse  (446) | [  ] Hayward Hall of Justice  (447)<br>[  ] Pleasanton, Gale-Schenone Hall of Justice  (448) |

| Civil Case Cover Sheet Category | Civil Case Cover Sheet Case Type | Alameda County Case Type (check only one) | | |
|---|---|---|---|---|
| Auto Tort | Auto tort (22) | [ ] | 34 | Auto tort (G) |
| | | **Is this an uninsured motorist case?  [ ] yes  [ ] no** | | |
| Other PI /PD / WD Tort | Asbestos (04) | [ ] | 75 | Asbestos (D) |
| | Product liability (24) | [ ] | 89 | Product liability (not asbestos or toxic tort/environmental) (G) |
| | Medical malpractice (45) | [ ] | 97 | Medical malpractice (G) |
| | Other PI/PD/WD tort (23) | [ ] | 33 | Other PI/PD/WD tort (G) |
| Non - PI /PD / WD Tort | Bus tort / unfair bus. practice (07) | [ √ ] | 79 | Bus tort / unfair bus. practice (G) |
| | Civil rights (08) | [ ] | 80 | Civil rights (G) |
| | Defamation (13) | [ ] | 84 | Defamation (G) |
| | Fraud (16) | [ ] | 24 | Fraud (G) |
| | Intellectual property (19) | [ ] | 87 | Intellectual property (G) |
| | Professional negligence (25) | [ ] | 59 | Professional negligence - non-medical (G) |
| | Other non-PI/PD/WD tort (35) | [ ] | 03 | Other non-PI/PD/WD tort (G) |
| Employment | Wrongful termination (36) | [ ] | 38 | Wrongful termination (G) |
| | Other employment (15) | [ ] | 85 | Other employment (G) |
| | | [ ] | 53 | Labor comm award confirmation |
| | | [ ] | 54 | Notice of appeal - L.C.A. |
| Contract | Breach contract / Wrnty (06) | [ ] | 04 | Breach contract / Wrnty (G) |
| | Collections (09) | [ ] | 81 | Collections (G) |
| | Insurance coverage (18) | [ ] | 86 | Ins. coverage - non-complex (G) |
| | Other contract (37) | [ ] | 98 | Other contract (G) |
| Real Property | Eminent domain / Inv Cdm (14) | [ ] | 18 | Eminent domain / Inv Cdm (G) |
| | Wrongful eviction (33) | [ ] | 17 | Wrongful eviction (G) |
| | Other real property (26) | [ ] | 36 | Other real property (G) |
| Unlawful Detainer | Commercial (31) | [ ] | 94 | Unlawful Detainer - commercial     **Is the deft. in possession** |
| | Residential (32) | [ ] | 47 | Unlawful Detainer - residential      **of the property?** |
| | Drugs (38) | [ ] | 21 | Unlawful detainer - drugs      **[ ] Yes   [ ] No** |
| Judicial Review | Asset forfeiture (05) | [ ] | 41 | Asset forfeiture |
| | Petition re: arbitration award (11) | [ ] | 62 | Pet. re: arbitration award |
| | Writ of Mandate (02) | [ ] | 49 | Writ of mandate |
| | | **Is this a CEQA action (Publ.Res.Code section 21000 et seq)  [ ] Yes  [ ] No** | | |
| | Other judicial review (39) | [ ] | 64 | Other judicial review |
| Provisionally Complex | Antitrust / Trade regulation (03) | [ ] | 77 | Antitrust / Trade regulation |
| | Construction defect (10) | [ ] | 82 | Construction defect |
| | Claims involving mass tort (40) | [ ] | 78 | Claims involving mass tort |
| | Securities litigation (28) | [ ] | 91 | Securities litigation |
| | Toxic tort / Environmental (30) | [ ] | 93 | Toxic tort / Environmental |
| | Ins covrg from cmplx case type (41) | [ ] | 95 | Ins covrg from complex case type |
| Enforcement of Judgment | Enforcement of judgment (20) | [ ] | 19 | Enforcement of judgment |
| | | [ ] | 08 | Confession of judgment |
| Misc Complaint | RICO (27) | [ ] | 90 | RICO (G) |
| | Partnership / Corp. governance (21) | [ ] | 88 | Partnership / Corp. governance (G) |
| | Other complaint (42) | [ ] | 68 | All other complaints (G) |
| Misc. Civil Petition | Other petition (43) | [ ] | 06 | Change of name |
| | | [ ] | 69 | Other petition |

Sabita J. Soneji (CA Bar No. 224262)
Tanya Koshy (CA Bar No. 277095)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 9punit4612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950
ssoneji@tzlegal.com
tkoshy@tzlegal.com

*Counsel for Plaintiffs and the Proposed Class*

ENDORSED
FILED
ALAMEDA COUNTY

28 2019

CLERK OF THE SUPERIOR COURT
By: ERICA BAKER, Deputy

FAXED

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF ALAMEDA

| | |
|---|---|
| LENAY JOHNSON AND LAMAR MOSLEY, individually and on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>EXTRA SPACE STORAGE INC.,<br><br>    Defendant. | Case No.  RG19004671<br><br>(JURY TRIAL DEMANDED)<br><br>**CLASS ACTION COMPLAINT** |

1   Plaintiffs Lenay Johnson and Lamar Mosley ("Plaintiffs"), on behalf of themselves and all

2   others similarly situated, bring this Class Action Complaint against Defendant Extra Space Storage Inc.

3   ("Extra Space" or "Defendant"). Plaintiffs, by their counsel, make the following allegations pursuant to

4   the investigation of their counsel and based upon information and belief, except as to allegations

5   specifically pertaining to themselves and their counsel, which are based on personal knowledge.

6                                   **INTRODUCTION**

7   1.   Extra Space engages in a deceptive bait-and-switch scheme: It lures consumers into

8   leasing Extra Space's storage units by advertising competitive rental rates, while hiding the fact that it

9   will hike up those rental rates shortly after consumers have signed leases.

10   2.   Extra Space advertises rental rates for its storage units without describing them as

11   "promotional" or "introductory," giving the impression to consumers that these rates are the true rental

12   rates and represent what they will pay if they sign leases.

13   3.   While Extra Space represents to consumers that it may raise rental rates to keep up with

14   "rising costs," it discloses to investors and other industry stakeholders that it raises rental rates to

15   generate more profit.

16   4.   Indeed, while Extra Space hikes up a consumer's rental rate after she signs a lease,

17   claiming that the increase is due to "rising costs," it continues to advertise a lower rate for the same size

18   unit to lure other consumers into signing leases.

19   5.   Extra Space knows that reasonable consumers would be unlikely to sign leases with

20   Extra Space if they knew that the rental rates to which they agreed in their leases were only temporary

21   and that Extra Space planned to increase their rates in a matter of months to generate additional profit,

22   not in order to keep with up "rising costs."

23   6.   Extra Space also knows that it can increase rental rates after reasonable consumers have

24   signed leases, because, at that point, reasonable consumers—having paid non-refundable administration

25   fees, organized their belongings, and paid for moving costs—are unlikely to terminate their leases and

26   restart the process with other storage facilities.

27

28

1         7.     By advertising competitive rental rates, increasing those rates after a consumer has

2    expended substantial time and money, and falsely representing that rate increases are due to "rising

3    costs," Extra Space has raked in millions of dollars in revenue at the expense of consumers.

4         8.     Plaintiffs bring this lawsuit on behalf of themselves and the class of consumers who

5    suffered damages after they rented storage units with Extra Space that they would not have otherwise

6    rented, at rates to which they would otherwise not have agreed, had they not been drawn in by Extra

7    Space's advertised rental rates.

8         9.     Extra Space's misleading bait-and-switch scheme constitutes false and misleading

9    advertising in violation of California's Unfair Competition Law (the "UCL") (Cal. Bus. & Prof. Code §

10   17200), California's False Advertising Law (the "FAL") (Cal. Bus. & Prof. Code § 17500) and

11   California's Consumer Legal Remedies Act (the "CLRA") (Cal. Civ. Code §§ 1750 *et seq.*).

12                                 **THE PARTIES**

13        10.     Plaintiff Lenay Johnson is a resident of Hawthorne, California.

14        11.     Plaintiff Lamar Mosley is a resident of Oakland, California.

15        12.     Defendant Extra Space, Inc. is a Maryland corporation with its headquarters and

16   principal place of business in Utah.

17                        **JURISDICTION AND VENUE**

18        13.     This Court has personal jurisdiction over Extra Space because Extra Space has sufficient

19   minimum contacts with the state of California and Plaintiffs' claims arise from those minimum contacts.

20   Specifically, Plaintiffs' claims against Extra Space arise out of its conduct within the State of California.

21        14.     This Court has subject matter jurisdiction over this class action pursuant to Code of Civ.

22   Proc. § 410.10, Bus. & Prof. Code § 17204, and the California Constitution.

23        15.     Venue is proper in the Superior Court for the County of Alameda, in that Extra Space

24   transacted business within the County, and many of the alleged unlawful acts and omissions likely took

25   place within this County.

26             **FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

27        16.     Extra Space, the second largest storage facility company in the country, employs a

28   deceptive bait-and-switch scheme to lure in consumers.

17.     Extra Space advertises competitive rental rates for its storage units to entice consumers to sign leases.

18.     But Extra Space's advertised rental rates are false promises. Extra Space claims on its website that it increases rental rates "in order to keep up with the rising costs associated with providing top-notch service and a clean, secure facility."[1]

19.     But once a consumer signs a lease, Extra Space increases the rate within months, irrespective of any "rising costs," while continuing to advertise the same-size unit for the lower rate to other consumers.

20.     Because Extra Space continues to advertise the lower rate for the same-size unit, it is apparent that Extra Space's frequent rental rate increases are not based on "rising costs."

21.     Extra Space knows that by the time Extra Space's deceptive bait-and-switch scheme is revealed, consumers have already invested the time, effort, and money to pack, transport, and store their belongings, and are unlikely to move.

22.     Moreover, Extra Space requires consumers who rent storage units to obtain insurance and pay a one-time, non-refundable administration fee. Given those costs, consumers who rent storage units are even less likely to move their belongings to another company's storage facility, despite advanced notice of Extra Space's rental rate increase.

23.     Indeed, Extra Space's executive leadership acknowledges that its deceptive bait-and-switch scheme is dependent on consumers having already invested substantial resources, because at that point, they are unlikely to move, even if they receive the notice of a rental rate increase.

24.     In an article for SpareFoot, a storage industry website, Extra Space's former Chief Executive Officer, Spencer F. Kirk, acknowledged that consumers will simply absorb a rental increase because of the time and money already spent:

> Kirk said that the vast majority of Extra Space customers absorb the rental rate increases without moving out.

---

[1] (Extra Space Storage, *Is my price guaranteed for as long as I rent?*, Frequently Asked Questions <https://www.extraspace.com/Storage/Questions.aspx> [as of Jan. 28, 2019].)

"We are hitting the sweet spot," Kirk said regarding the company's rate increases on existing customers. **Extra Space is able to raise rates on customers up to 10 percent with little pushback,** he said.

"**Let's be realistic about this. If you are renting a unit and you find out your rent is going up $15, you are not likely to rent a U-Haul truck, pack up your stuff, go down the street, unpack your stuff and return the truck just to save 15 bucks,**" Kirk said, "Most people won't go through the effort to do that."

Harris, *Extra Space finds "sweet spot" on rent increases* (May 3, 2016) SpareFoot, attached as Exhibit A (emphasis added).

25.     Extra Space also discloses to its investors that raising rents is a substantial part of its revenue growth strategy, and is not related to "rising costs." In a call to investors to discuss its fourth quarter and year-end earnings for 2017, Extra Space's Chief Executive Officer Joseph Margolis explained that "[s]trong occupancy together with **increased rental rates to new and existing customers led to same-store revenue growth** for the year of 5.1%, [net operating income] growth of 6.9% . . . ."[2]

26.     Such false and misleading advertising, where the deception is revealed only after a consumer has invested resources to rent a storage unit, is actionable under California consumer protection laws.

27.     Extra Space's deceptive pricing practices also divert business to Extra Space that would have otherwise gone to its competitors.

28.     Rental rates of storage units leased by Extra Space are material to consumers. And the fact that Extra Space advertises a rental rate for a storage unit and then increases the rate months after a consumer signs a lease—while still advertising the same lower rate for the same-size unit—is also material to consumers.

29.     Unsurprisingly, many consumers have been duped by Extra Space's bait-and-switch

---

[2] (Extra Space Storage Q4 Earnings Call Transcript (Feb. 21, 2018) Seeking Alpha <https://seekingalpha.com/article/4149161-extra-space-storages-exr-ceo-joseph-margolis-q4-2017-results-earnings-call-transcript?part=single> [as of Jan. 28. 2019] ["We projected 2017 would be characterized by a gradual return towards historical and sustainable revenue and NOI growth levels. That is exactly what happened. Strong occupancy together with increased rental rates to new and existing customers led to same-store revenue growth for the year of 5.1%, NOI growth of 6.9% and core FFO growth of 13.8%."]; *see also id.* ["Throughout the quarter, we increased rates to new customers in the low to mid single digits, and we continue our existing customer rate increase program without changes."].)

advertising into leasing storage units from Extra Space.

30.    Consumers nationwide have complained, in a consistent fashion, about Extra Space's bait-and-switch scheme:

"I rented a unit about 3 months ago and just got a notice in the mail let me know they were increasing my rent by 58%. **I was paying $224 a month and they want $354 now! I went online and the online price for the same unit is $42 a month cheaper.** I went in to try to have them fix this and they were unable to do anything stating that supply and demand caused the rate hike. Be warned that their rates posted will go massively up without little to no warning."
– Jason of Placentia, CA (April 5, 2018)[3]

\*\*\*

"I have been with this rip off company for too many years. **I'm sick and tired of the price changes every six months.** I think I'm going to call my local news WAVYTV10 and ask them to do a report. I suggest anyone who sees this and know what I'm talking about does the same. I have never been with a company who does this. I'm in the military I pay on time and have been with them forever. The facility I am in is nice and fairly convenient to where I live. This price jacking is insane! Please report them to every possible social media and consumer reports avenue.:
– Tameaka of Virginia Beach, VA (August 23, 2018)[4]

\*\*\*

"**New place and have low monthly rates to start BUT, I just got a 15% increase in monthly rate after being there only 5 months.** So, Chicago has no protections on rent increases and **storage companies know that you must rent a truck and move the stuff out.** Also, I have had many times at this location where I can not [sic] get into the garage space because moving companies are allowed to block the garage from other paying customers."
– Victor Z. of Chicago, IL (April 5, 2017)[5]

31.    All consumers who have been enticed into leasing storage units from Extra Space by the pricing practices described in this Complaint have suffered damage as a result of Extra Space's bait-and-switch advertising. Plaintiffs bring this action to represent those consumers who leased from Extra Storage and suffered damages in the amount of the difference between the increased rental rates and the original rental rates to which Plaintiffs and Class members agreed in their leases, in amounts that will be proven at trial.

---

[3] (Extra Space Storage, Consumer Affairs < https://www.consumeraffairs.com/movers/extra-space-self-storage.html?page=2> [as of Jan. 28, 2019].)

[4] (Extra Space Storage, Consumer Affairs <https://www.consumeraffairs.com/movers/extra-space-self-storage.html> [as of Jan. 28, 2019].)

[5] (Extra Space Storage, Yelp <*available at* https://www.yelp.com/biz/extra-space-storage-chicago-34?osq=Extra+Space+Storage> [as of Jan. 28, 2019].)

## THE EXPERIENCES OF THE NAMED PLAINTFFS
### *Plaintiff Lamar Mosley*

32.    Plaintiff Lamar Mosley rented a storage unit in April 2018 at Extra Space's facility located at 6401 San Leandro Street, Oakland, California 94621 at a monthly rate of $127. Mr. Mosley needed a storage unit because he had recently moved from Lathrop, California to Oakland, California, and his new home in Oakland could not hold all of his and his family's belongings. Though there were storage facilities closer to his home, Mr. Mosley rented with Extra Space because of its competitive pricing. At the time he was considering renting with Extra Space, an Extra Space employee at the 6401 San Leandro Street location advised that Mr. Mosley could either get a free month's rent or commit to a low rate if he rented "long term." The employee also advised that Extra Space would not arbitrarily raise rates and would only raise his rate to cover costs.

33.    Five months later, in September 2018, Mr. Mosley's rate went up from $127 to $146. Mr. Mosley did not get any notice of the rental increase. Rather, Mr. Mosley received an email from Extra Space notifying him of his new billing statement, which included the increased rental rate.

34.    Because of the expense and time it would take to find a new storage facility and move his belongings from Extra Space to another facility, Mr. Mosley continued to rent with Extra Space despite the rate increase.

35.    Extra Space's deceptive advertised rental rate was a substantial factor in causing Mr. Mosley's decision to lease a unit.

36.    That is, if Mr. Mosley had known at the time he rented that Extra Space had a practice of increasing rental rates for all consumers who rent storage units within a few months, for reasons unrelated to rising costs, he would not have rented with Extra Space.

37.    Moreover, if Mr. Mosley had known that the purpose of the increase in his rental rate was to increase profits, not to keep up with rising costs as represented, he would not have continued to lease a storage unit with Extra Space.

38.    Because of Extra Space's past deception, Mr. Mosley will be unable to rely on Extra Space's advertising in the future. As a result, he will not lease another unit, even though he would like to.

39.    If Extra Space's true rental rate was advertised from the outset, and did not increase for

7

reasons other than rising costs as represented, Mr. Mosley would likely lease a unit with Extra Space in the future.

*Plaintiff Lenay Johnson*

40.     Plaintiff Lenay Johnson rented a storage unit in March 2018 at Extra Space's facility located at 17575 S. Western Avenue, Gardena, California, 90248 at a monthly rate of $205. Ms. Johnson needed a storage unit because she had recently moved in with her mother.

41.     Ms. Johnson was told by an Extra Space employee at the at 17575 S. Western Avenue, Gardena, California, 90248 location that her rate would only go up because of rising costs.

42.     Four months later, in July 2018, Ms. Johnson received a postcard in the mail notifying her that her rate would go up from $205 to $236 on August 17, 2018.

43.     Because of the expense and time it would take to find a new storage facility and move her belongings from Extra Space to another facility, Ms. Johnson continued to rent with Extra Space despite the increase.

44.     Extra Space's deceptive advertised rental rate was a substantial factor in causing Ms. Johnson's decision to lease a unit.

45.     That is, if Ms. Johnson had known at the time she rented that Extra Space had a practice of increasing rental rates within a few months for all consumers who rent storage units, for reasons unrelated to rising costs, she would not have rented with Extra Space.

46.     Moreover, if Ms. Johnson had known that the purpose of the increase in her rental rate was to increase profits, not to keep up with rising costs as represented, she would not have continued to lease a storage unit with Extra Space.

47.     Because of Extra Space's past deception, Ms. Johnson will be unable to rely on Extra Space's advertising in the future. As a result, she will not lease another unit, even though she would like to.

48.     If Extra Space's true rental rate was advertised from the outset, and did not increase for reasons other than rising costs as represented, Ms. Johnson would likely lease a unit with Extra Space in the future.

## CLASS ACTION ALLEGATIONS

49.    Plaintiffs bring this action on behalf of themselves and the class defined as follows:

All persons residing in the United States who signed leases for storage units in California from Extra Space Storage from January 28, 2015 to present.

50.    The questions here are ones of common or general interest class that there is a well-defined community of interest among the class members. These questions predominate over questions that may affect only individual class members because Extra Space has acted on grounds generally applicable to the class.  Such common legal or factual questions include, but are not limited to:

a.   Whether Defendant's pricing practices were and are likely to mislead consumers;

b.   Whether Defendant's representations, including on its website, that increases in rental rates are related to "rising costs" are false and misleading;

c.   Whether Defendant knew or should have known that its pricing practices were and are likely to mislead consumers;

d.   Whether Defendant knew or should have known that its advertised prices for its storage units were and are false and/or misleading;

e.   Whether Defendant made and continues to make false or misleading statements of fact concerning advertised rental rates;

f.   Whether Defendant made and continues to make false or misleading statements of fact concerning the circumstances under which it will increase its rental rates;

g.    Whether the facts Defendant failed and continues to fail to disclose in its advertising were and are material;

h.   Whether reliance on Defendant's misrepresentations and omissions is presumed;

i.   Whether Defendant's acts alleged herein were unlawful;

j.   Whether Defendant's acts alleged herein were and are unfair;

k.   Whether consumers suffered and continue to suffer damage as a result of Defendant's acts alleged herein;

l.   The extent of the damage suffered by consumers as a result of Defendant's acts alleged herein;

m.   Whether Defendant should be enjoined from continuing to advertise as alleged herein.

1        51.     Members of the class are so numerous that joinder is impracticable. While the exact

2  number of class members is unknown to Plaintiffs, it is believed that the class comprises thousands of

3  members geographically disbursed throughout California.

4        52.     It is impracticable to bring Class members' individual claims before the Court. Class

5  treatment permits a large number of similarly situated persons or entities to prosecute their common

6  claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of

7  evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous

8  individual actions would engender. The benefits of the class mechanism, including providing injured

9  persons or entities with a method for obtaining redress on claims that might not be practicable to

10  pursue individually, substantially outweigh any difficulties that may arise in the management of this class

11  action.

12        53.     Plaintiffs' claims are typical of the members of the class and all subclasses, as all

13  members of the class are similarly affected by Extra Space's actionable conduct. Plaintiffs and all

14  members of the class leased storage units with Extra Space in California. In addition, Extra Space's

15  conduct that gave rise to the claims of Plaintiffs and members of the class (*i.e.* advertising a rental rate

16  and then increasing the rate after Plaintiffs signed leases without any connection to rising costs) is the

17  same for all members of the class.

18        54.     Plaintiffs will fairly and adequately protect the interests of the class because they have

19  no interests antagonistic to, or in conflict with, the class that Plaintiffs seeks to represent. Furthermore,

20  Plaintiffs have retained counsel experienced and competent in the prosecution of complex class action

21  litigation, particularly that involving false and misleading advertising.

22        55.     Plaintiffs know of no difficulty to be encountered in this action that would preclude its

23  maintenance as a class action.

24        56.     Extra Space has acted or refused to act on grounds generally applicable to the class,

25  thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the

26  class as a whole.

27

28

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Violations of False Advertising Law (California Business and Professions Code section 17500)**

**(By Plaintiffs and on Behalf of the Class)**

57.     Plaintiffs repeat and reallege each and every fact, matter, and allegation set forth above and incorporates them at this point by reference as though set forth in full.

58.     Defendant's acts alleged herein violate California Business and Professions Code section 17500. Defendant acted knowingly, recklessly, and in conscious disregard of the true facts in perpetuating its deceptive advertising scheme and causing injuries to Plaintiffs and the Class.

59.     Plaintiffs and the Class have been misled and unfairly induced to enter into transactions and to overpay for the lease of storage units. As a result of Defendant's false and misleading pricing practices, misrepresentations, and omissions, Plaintiffs and the Class have been injured in amounts not less than the difference between any increase in their rental rates and the original rental rates to which Plaintiffs and Class members agreed in their leases, but which are believed to exceed the hundreds of thousands, or possibly millions, of dollars in the aggregate. These amounts have been paid to Defendant by Plaintiffs and the Class and should be restored to them.

## SECOND CAUSE OF ACTION

**Violations of Unfair Competition Law (California Business and Professions Code section 17200)**

**(By Plaintiffs and on Behalf of the Class)**

60.     Plaintiffs repeat and reallege each and every fact, matter, and allegation set forth above and incorporates them at this point by reference as though set forth in full.

61.     Defendant has engaged in business acts and practices that, as alleged above, constitute unfair competition in violation of Business and Professions Code section 17200. Specifically, Defendant's acts alleged herein are unfair and likely to deceive the general public, and Defendant's acts alleged herein are unlawful in that they violate California Business and Professions Code section 17500 (false and misleading advertising), and California Civil Code sections 1770(a)(9), (13), and (14) (CLRA), as well as other federal and state statutes and regulations.

62.     As a result of Defendant's unfair, fraudulent, and unlawful business practices alleged herein, Plaintiffs and the Class have been injured in amounts not less than the difference between any

1   increase in their rental rates and the original rental rates to which Plaintiffs and Class members agreed in

2   their leases, which amounts have not yet been ascertained but which are believed to exceed the hundreds

3   of thousands, or possibly millions, of dollars in the aggregate. These amounts have been paid to

4   Defendant by Plaintiffs and the Class and should be restored to them.

5       63.   If Defendant is permitted to continue to engage in the unlawful, unfair, and fraudulent

6   pricing practices described above, its conduct will engender further injury, expanding the number of

7   injured members of the public beyond its already large size, and will tend to render any judgment at law,

8   by itself, ineffectual. Under such circumstances, Plaintiffs and the Class have no adequate remedy at law

9   in that Defendant will continue to engage in the wrongful conduct alleged herein, thus engendering a

10  multiplicity of judicial proceedings. Plaintiffs and the Class request and are entitled to injunctive relief,

11  enjoining Defendant from continuing to engage in the unfair, unlawful, and fraudulent advertising

12  described herein.

### THIRD CAUSE OF ACTION

**Violations of the California Consumers Legal Remedies Act**
**(By Plaintiffs and on Behalf of the Class)**

16      64.   Plaintiffs repeat and realleges each and every fact, matter, and allegation set forth above
and incorporates them at this point by reference as though set forth in full.

        65.   At all relevant times, Plaintiffs were "consumers" as defined by California Civil Code
section 1761(d).

        66.   At all relevant times, Defendant's storage units constituted "goods" as defined by
California Civil Code section 1761(a).

        67.   At all relevant times, Defendant constituted a "person" as defined by California Civil
Code section 1761(c).

        68.   At all relevant times, Plaintiffs and each of the Class member's purchases of Defendant's
goods constituted a "transaction" as defined by California Civil Code section 1761(e).

        69.   The CLRA provides that it is unlawful to: (i) advertise goods or services with the intent
not to sell them as advertised; and (ii) represent that a transaction confers or involves rights, remedies, or

1   obligations which it does not have or involve, or which are prohibited by law. Cal. Civ. Code §§ 1770(a)(9),

2   (14). Defendant's acts alleged herein violate the CLRA.

3         70.    Plaintiffs, on behalf of themselves and the Class, seeks an order enjoining Defendant's

4   unfair or deceptive acts or practices, equitable relief, an award of attorneys' fees and costs under Cal. Civ.

5   Code § 1780(e).

6         71.    Plaintiffs and Class members reserve the right to give statutory written notice of this claim

7   via certified mail, and to thereafter seek damages via an amended complaint.

8        **WHEREFORE,** Plaintiffs pray for judgment as follows:

9                **ON THE FIRST AND SECOND CAUSES OF ACTION**

10       72.    For an order requiring Defendant to restore monies that Defendant acquired from

11   Plaintiffs and Class members in the amount not less than the difference between any increase in

12   Plaintiffs and Class Members' rental rates and the original rental rates to which Plaintiffs and Class

13   members agreed in their leases;

14       73.    Interest on all such sums restored at the maximum legal rate;

15       74.    For an order or orders enjoining Defendant from continuing to employ unfair

16   methods of competition and commit unfair and deceptive acts and practices alleged in this

17   complaint and any other acts and practices proven at trial;

18       75.    For an award of attorneys' fees to Plaintiffs' counsel pursuant to section 1021.5 of

19   the California Code of Civil Procedure;

20       76.    For costs of suit incurred in this action; and

21       77.    For such other and further relief as the Court may deem just and proper.

22                   **ON THE THIRD CAUSE OF ACTION**

23       78.    For an order or orders enjoining Defendant from continuing to employ unfair methods

24   of competition and commit unfair and deceptive acts and practices alleged in this complaint and any

25   other such acts and practices proven at trial;

26       79.    For an award of costs and attorneys' fees to Plaintiffs' counsel pursuant to California Civil

27   Code section 1780(d) and California Code of Civil Procedure section 1021.5;

28       80.    For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a jury trial in the instant action.

Dated:  January 28, 2019                                 Respectfully submitted,

Sabina J. Soneji (CA Bar No. 224262)
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950
ssoneji@tzlegal.com

EXHIBIT A

This is Google's cache of https://www.sparefoot.com/self-storage/news/4015-extra-space-starts-2016-strong/ (https://www.sparefoot.com/self-storage/news/4015-extra-space-starts-2016-strong/). It is a snapshot of the page as it appeared on Sep 26, 2018 09:54:30 GMT. The current page (https://www.sparefoot.com/self-storage/news/4015-extra-space-starts-2016-strong/) could have changed in the meantime. Learn more. (http://support.google.com/websearch/bin/answer.py?hl=en&p=cached&answer=1687222)

**Full version**      Text-only version (http://webcache.googleusercontent.com/search?q=cache:eZAWYaNNVCUJ:https://www.sparefoot.com/self-storage/news/4015-extra-space-starts-2016-
Tip: To quickly find your search term on this page, press **Ctrl+F** or **⌘-F** (Mac) and use the find bar.

## Extra Space finds "sweet spot" on rent increases

by Alexander Harris (https://www.sparefoot.com/self-storage/news/author/alexander-harris/) on May 3,
2016 (https://www.sparefoot.com/self-storage/news/4015-extra-space-starts-2016-strong/)

After buying up more 170 self-storage locations for more than $1.7 billion last year, Salt Lake City, UT-
based Extra Space Storage isn't done yet.

The company acquired 21 stores in the first quarter for $192 million. The company has closed or put under
contract another 21 locations since the end of the quarter that total more than $262 million.

CEO Spencer Kirk said during the company's quarterly earnings call that he witnessed elevated deal flow
during the first quarter. While the properties coming to market run the gamut in terms of quality, Kirk said
they do have one thing in common.

"We see asset quality spanning the spectrum. The constant in all of this, prices are high, really high," Kirk
said, "You can have crappy assets that we think are just way out of market, and you can have really nice
assets, that even for us or the other REITs, are getting a bit too rich to transact."

### Looking for smart deals

That's in part due to the increasing number of buyers both in and out of the industry looking to deploy
capital into the asset class.

"There is a lot of money chasing these assets," Kirk said.

Extra Space remains focused on "opportunities that make sense geographically and economically," Kirk
said.

So far this year, the company has also purchased three facilities at certificate of occupancy for $32 million.
It has four more C of O deals under contract for a total of $27.45 million. In addition, the company
purchased three additional facilities at C of O as part of joint ventures. Six more are under contract for
purchase via JV partners.



(https://www.sparefoot.com/self-storage/news/wp-content/uploads/sites/4/2016/04/stockbridge-
e1461190636878.jpg)

A recently acquired Extra Space location in near Atlanta, GA.

### Strong start

Extra Space reported revenue during the first quarter of $229.4 million, an increase of 32.5 percent
compared to last year. Profits hit $89.4 million during the quarter, up 52 percent.

Same-store performance was also strong: revenue climbed 9.1 percent and NOI up to 12.3 percent.

Performance was boosted by high same-store occupancy, ending the quarter at 92.8 percent—the highest
first quarter ending occupancy in the company's history. At the same time rents charged at same-store
locations rose an average of 7.5 percent to reach a total of $15.67 per square foot.

### Finding the sweet spot

Kirk said that the vast majority of Extra Space customers absorb rental rate increases without moving out.

"We are hitting the sweet spot," Kirk said regarding the company's rate increases on existing customers. Extra Space is able to raise rates on customers up to 10 percent with little pushback, he said.

"Let's be realistic about this. If you are renting a unit and you find out your rent is going up $15, you are not likely to rent a U-Haul truck, pack up your stuff, go down the street, unpack your stuff and return the truck just to save 15 bucks," Kirk said, "Most people won't go through the effort to do that."

Advertisement

# SUMMONS
## (CITACION JUDICIAL)

FOR COU... 21121901
(SOLO PARA USO DE LA CORTE)

**FILED**
ALAMEDA COUNTY

JAN 2 8 2019

CLERK OF THE SUPERIOR COURT
By _Erica Barker_

FAXED

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Extra Space Storage Inc.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Lenay Johnson and Lamar Mosley, individually and on behalf of themselves and all other similarly situated

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Alameda Superior Court

1225 Fallon Street,
Oakland, CA 94612

CASE NUMBER:
*(Número del Caso):* **RG19004671**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Sabita J. Soneji; 1970 Broadway, Suite 1070, Oakland, CA 94612; (510) 254-6808

DATE: **JAN 2 8 2019**
*(Fecha)*

Clerk, by _Erica Barker_, Deputy
*(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Tycko & Zavareei LLP
Attn: Soneji, Sabita J
1970 Broadway
#1070
Oakland, CA  94612

Extra Space Storage Inc.

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

Johnson

Plaintiff/Petitioner(s)

VS.

Extra Space Storage Inc.

Defendant/Respondent(s)
(Abbreviated Title)

No. <u>RG19004671</u>

NOTICE OF HEARING

To each party or to the attorney(s) of record for each party herein:

Notice is hereby given that the above-entitled action has been set for:

Complex Determination Hearing
Case Management Conference

You are hereby notified to appear at the following Court location on the date and time noted below:

Complex Determination Hearing:
DATE:  03/12/2019    TIME:  03:00 PM    DEPARTMENT:  23
LOCATION:  Administration Building, Fourth Floor
                    1221 Oak Street, Oakland

Case Management Conference:
DATE:  04/23/2019    TIME:  03:00 PM    DEPARTMENT:  23
LOCATION:  Administration Building, Fourth Floor
                    1221 Oak Street, Oakland

Pursuant to California Rules of Court, Rule 3.400 et seq. and Local Rule 3.250 (Unified Rules of the Superior Court, County of Alameda), the above-entitled matter is set for a Complex Litigation Determination Hearing and Initial Complex Case Management Conference.

Department 23 issues tentative rulings on DomainWeb (www.alameda.courts.ca.gov/domainweb). For parties lacking access to DomainWeb, the tentative ruling must be obtained from the clerk at (510) 267-6939.  Please consult Rule 3.30(c) of the Unified Rules of the Superior Court, County of Alameda, concerning the tentative ruling procedures for Department 23.

Counsel or party requesting complex litigation designation is ordered to serve a copy of this notice on all parties omitted from this notice or brought into the action after this notice was mailed.

All counsel of record and any unrepresented parties are ordered to attend this Initial Complex Case Management Conference unless otherwise notified by the Court.

Failure to appear, comply with local rules or provide a Case Management Conference statement may result in sanctions.  Case Management Statements may be filed by E-Delivery, by submitting directly to the E-Delivery Fax Number (510) 267-5732.  No fee is charged for this service.  For further information, go to **Direct Calendar Departments** at

http://apps.alameda.courts.ca.gov/domainweb.

All motions in this matter to be heard prior to Complex Litigation Determination Hearing must be scheduled for hearing in Department 23.

If the information contained in this notice requires change or clarification, please contact the courtroom clerk for Department 23 by e-mail at Dept.23@alameda.courts.ca.gov or by phone at (510) 267-6939.

TELEPHONIC COURT APPEARANCES at Case Management Conferences may be available by contacting CourtCall, an independent vendor, at least 3 business days prior to the scheduled conference. Parties can make arrangements by calling (888) 882-6878, or faxing a service request form to (888) 883-2946. This service is subject to charges by the vendor.

Dated:  01/30/2019                    Chad Finke  Executive Officer / Clerk of the Superior Court

                             By _____
                                                        Deputy Clerk

---

### CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to this cause.  I served this Notice by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 01/31/2019.

                             By _____
                                                        Deputy Clerk

21136417

1   Sabita J. Soneji (CA Bar No. 224262)
    Tanya S. Koshy (CA Bar No. 277095)
2   **TYCKO & ZAVAREEI LLP**
    1970 Broadway, Suite 1070
3   Oakland, CA 94612
    Telephone (510) 254-6808
4   (202) 973-0950 *facsimile*
    ssoneji@tzlegal.com
5   tkoshy@tzlegal.com

6   *Counsel for Plaintiffs*

7

8

9

10

11

12

**FILED**
**ALAMEDA COUNTY**

FEB **13** 2019

CLERK OF THE SUPERIOR COURT
By _____
                                Deputy

### THE SUPERIOR COURT OF CALIFORNIA
### COUNTY OF ALAMEDA

13   LENAY JOHNSON AND LAMAR
     MOSLEY, individually and on behalf of
14   themselves and all others similarly situated,

15                        Plaintiff,

16            v.

17   EXTRA SPACE STORAGE INC.,

18                        Defendant.

19

Case No. RG19004671

**PROOF OF SERVICE**

**FAXED**

Action filed: January 28, 2019

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE– Case No. RG19004671

| Attorney or Party without Attorney:<br>TYCKO & ZAVAREEI LLP<br>SABITA SONEJI (SBN 224262)<br>483 NINTH STREET SUITE 200<br>OAKLAND, CA 94607<br>  Telephone No: 510.254.6806<br><br>  Attorney For:  Plaintiff | | For Court Use Only |
|---|---|---|
| | Ref. No. or File No.: | |
| Insert name of Court, and Judicial District and Branch Court:<br>Superior Court of California, County of Alameda | | |
| Plaintiff:  Lenay Johnson and Lamar Mosley, individually and on behalf of themselves<br>  and all other similarly situated<br>Defendant:  Extra Space Storage, Inc. | | |

| PROOF OF SERVICE<br>SUMMONS | Hearing Date: | Time: | Dept/Div: | Case Number:<br>RG19004671 |
|---|---|---|---|---|

1.  *At the time of service I was at least 18 years of age and not a party to this action.*

2.  I served copies of the SUMMONS; COMPLAINT; CIVIL CASE COVER SHEET; NOTICE OF HEARING

3.  a.  *Party served:*     Extra Space Storage, Inc.
    b.  *Person served:*   GABRIELA SANCHEZ, INTAKE SPECIALIST, CT CORPORATION SYSTEM, REGISTERED AGENT FOR SERVICE
         OF PROCESS.

4.  *Address where the party was served:*   818 W. 7TH STREET SUITE 930, LOS ANGELES , CA 90017

5.  *I served the party:*
    a. **by personal service.**   I personally delivered the documents listed in item 2 to the party or person authorized to receive
         process for the party (1) on: Mon, Feb 04 2019 at: 02:55 PM
    (1)  [ X ]  (business)
    (2)  [   ]  (home)
    (3)  [   ]  (other) :

6.  The "Notice to the Person Served" (on the summons) was completed as follows:
    a.  [   ]   as an individual defendant.
    b.  [   ]   as the person sued under the fictitious name of *(specify)*:
    c.  [   ]   as occupant.
    d.  [ X ]   On behalf of *(specify)*:   Extra Space Storage, Inc.
          under the following Code of Civil Procedure section:

| | | |
|---|---|---|
| [ X ]  416.10 (corporation) | [   ]  415.95 (business organization, form unknown) |
| [   ]  416.20 (defunct corporation) | [   ]  416.60 (minor) |
| [   ]  416.30 (joint stock company/association) | [   ]  416.70 (ward or conservatee) |
| [   ]  416.40 (association or partnership) | [   ]  416.90 (authorized person) |
| [   ]  416.50 (public entity) | [   ]  415.46 (occupant) |
| [   ]  other: | |



Judicial Council Form POS-010<br>Rule 2.150.(a)&(b) Rev January 1, 2007

**PROOF OF<br>SERVICE<br>SUMMONS**

*3039130*<br>*(7575193)*<br>Page 1 of 2

| Attorney or Party without Attorney:<br>TYCKO & ZAVAREEI LLP<br>SABITA SONEJI (SBN 224262)<br>483 NINTH STREET SUITE 200<br>OAKLAND, CA 94607<br>  Telephone No: 510.254.6806 | | | | For Court Use Only |
|---|---|---|---|---|
| Attorney For:  Plaintiff | Ref. No. or File No.: | | | |
| Insert name of Court, and Judicial District and Branch Court:<br>Superior Court of California; County of Alameda | | | | |
| Plaintiff:  Lenay Johnson and Lamar Mosley, individually and on behalf of themselves<br>            and all other similarly situated<br>Defendant:  Extra Space Storage, Inc. | | | | |

| PROOF OF SERVICE<br>SUMMONS | Hearing Date: | Time: | Dept/Div: | Case Number:<br>RG19004671 |
|---|---|---|---|---|

Recoverable cost Per CCP 1033.5(a)(4)(B)

7. **Person who served papers**
   a. Name:            Douglas Forrest
   b. Address:         **FIRST LEGAL**
                       1202 Howard Street
                       SAN FRANCISCO, CA 94103
   c. Telephone number:  (415) 626-3111
   d. **The fee** for service was:
   e. I am:
      (1) ☐  not a registered California process server.
      (2) ☐  exempt from registration under Business and Professions Code section 22350(b).
      (3) ☒  a registered California process server:
          (i)   ☐ owner  ☐ employee  ☒ independent contractor
          (ii)  Registration No:  5141, Los Angeles
          (iii) County:  Los Angeles

8. *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

|  | |
|---|---|
| 02/05/2019 | |
| *(Date)* | *Douglas Forrest* |

**FL**
FIRST LEGAL

Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

**PROOF OF
SERVICE
SUMMONS**

3039130
(7575193)
Page 2 of 2



21126447

1  Sabita J. Soneji (CA Bar No. 224262)
2  Tanya Koshy (CA Bar No. 277095)
   **TYCKO & ZAVAREEI LLP**
3  1970 Broadway, Suite 1070
   Oakland, CA 94612
4  Telephone: (510) 254-6808
   Facsimile: (202) 973-0950
5  ssoneji@tzlegal.com
6  tkoshy@tzlegal.com

7

8  *Counsel for Plaintiffs and the Proposed Class*

9           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                    **COUNTY OF ALAMEDA**

11

12  LENAY JOHNSON AND LAMAR MOSLEY,
    individually and on behalf of themselves and all
13  others similarly situated,                         Case No. RG19004671
                        Plaintiffs,
14                                                      **STIPULATION TO EXTEND**
          v.                                           **DEADLINES AND [PROPOSED]**
15                                                      **ORDER**
    EXTRA SPACE STORAGE INC.,
16
                        Defendant.
17

18

19

20

21

22

23

24

25

26

27

28



FILED
ALAMEDA COUNTY
MAR - 5 2019

FAXED

1  Plaintiffs Lamar Mosley and Lenay Johnson ("Plaintiffs") and Defendant Extra Space Storage,

2  Inc. ("Defendant"), through undersigned counsel, stipulate and request the Court continue the deadline

3  for Defendant to answer or otherwise respond to the Complaint to April 24, 2019.

4  WHEREAS, Plaintiffs filed their Complaint on January 28, 2019 and Plaintiffs served the

5  Summons and Complaint on Defendant on February 4, 2019;

6  WHEREAS, Defendant's deadline to answer or otherwise respond to the Complaint is thus

7  March 6, 2019;

8  WHEREAS, on February 21, 2019, Plaintiffs served a letter to Defendant, through its counsel,

9

10  detailing its violations of the California Consumer Legal Remedies Act ("CLRA"), Civil Code § 1770;

11  WHEREAS, Plaintiffs intend to amend their Complaint to add another plaintiff and also add

12  the contemplated CLRA claim for damages, pursuant to Cal. Civ. C. § 1782(d) as soon as permissible;

13  WHEREAS, Defendant does not waive, and expressly reserves, its right to assert all defenses

14  including to contest jurisdiction and to move to compel arbitration;

15  and

16  WHEREAS, the parties want to streamline the amendment and response process to conserve

17  judicial resources and therefore agree that Plaintiffs will file their Amended Complaint on March 25,

18  2019 and Defendant's deadline to answer or otherwise respond will be extended to April 24, 2019,

19

20  which is 30 days after Plaintiffs file their Amended Complaint:

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

---

2

STIPULATION TO EXTEND DEADLINES AND [PROPOSED] ORDER

1    The parties hereby STIPULATE that Defendant's deadline to file an answer or otherwise

2  respond is extended until April 24, 2019.

3  Dated: March 5, 2019                          Respectfully submitted,

4

5                                    By:   /s/ Sabita J. Soneji
                                          Sabita J. Soneji
6                                         TYCKO & ZAVAREEI LLP
                                          1970 Broadway, Suite 1070
7                                         Oakland, CA 94612
                                          Telephone: (510) 254-6808
8                                         Facsimile: (202) 973-0950
                                          ssoneji@tzlegal.com
9

10                                        Attorney for Plaintiffs Johnson and Mosley

11
   Dated: March 5, 2019
12

13                                   By:   /s/ Quyen Ta
                                          Quyen Ta
14                                        BOIES SCHILLER FLEXNER LLP
                                          1999 Harrison Street, Suite 900
15                                        Oakland, CA 94612
                                          Telephone: (510) 874-1209
16                                        qta@bsfllp.com

17                                        Attorney for Defendant Extra Space Storage Inc.

18

19                       **ATTESTATION**

20     In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this

21  document has been obtained from the other signatory.

22

23

24  DATED:  March 5, 2019                     By: /s/ Sabita J. Soneji
                                              Sabita J. Soneji
25

26                                            Attorney for Plaintiffs Johnson and Mosley

27

28

                              3
              STIPULATION TO EXTEND DEADLINES AND [PROPOSED] ORDER

1

### [PROPOSED] ORDER

2

Good cause shown, the Court hereby ORDERS the Answer or other response is due on April,

3

24, 2019.

4

5

6

DATED: _____          _____

7

Hon. Brad Seligman
Judge of the Superior Court

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21126448

Sabita J. Soneji (CA Bar No. 224262)
Tanya Koshy (CA Bar No. 277095)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950
ssoneji@tzlegal.com
tkoshy@tzlegal.com

*Counsel for Plaintiffs and the Proposed Class*




FILED
ALAMEDA COUNTY

MAR - 5 2019


FAXED

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF ALAMEDA

LENAY JOHNSON AND LAMAR MOSLEY, individually and on behalf of themselves and all others similarly situated,

           Plaintiffs,

    v.

EXTRA SPACE STORAGE INC.,

           Defendant.

Case No. RG19004671

**PROOF OF SERVICE**

1

## PROOF OF SERVICE

2   At the time of service, I was over 18 years of age and not a party to this action. I am employed in the

3   County of Alameda, State of California. My business address is 1970 Broadway, Suite 1070, Oakland, CA

94612.

4   On March 5, 2019, I served true copies of the following document(s) described as:

5

6         • STIPULATION TO EXTEND DEADLINES AND [PROPOSED] ORDER

7   to the interested parties below:

8   Quyen L. Ta
     BOIES SCHILLER FLEXNER LLP

9   1999 Harrison Street, Suite 900
     Oakland, CA 94612

10  qta@bsfllp.com

11  *Attorney for Defendant Extra Space Storage, Inc.*

12  **[X] BY E-MAIL:** I transmitted a correct and true attachment of the document(s) to the email

13  addresses listed above.

14  **[X] BY FIRST CLASS MAIL:** I enclosed a copy of the document(s) in a sealed envelope addressed as
     indicated above and deposited it with the United States Postal Service, first class postage fully prepaid.

15

16  I declare under penalty of perjury under the laws of the State of California that the above is true and

correct.

17  EXECUTED this 5th day of March 2019, in Oakland, CA.

18

19                              *Chloe Noh*

20                             **Chloe Hyunji Noh**

21

22

23

24

25

26

27

28

Tycko & Zavareei LLP
Attn:  Soneji, Sabita J
1970 Broadway
#1070
Oakland, CA   94612

Boies Schiller Flexner LLP
Attn:  Ta, Quyen L.
1999 Harrison Street
Suite 900
Oakland, CA   94612____

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

Johnson

                Plaintiff/Petitioner(s)

VS.

Extra Space Storage Inc.

           Defendant/Respondent(s)
           (Abbreviated Title)

No. RG19004671

Stipulation and Order Re: Extension of
Time to Respond to Complaint Granted

IT IS ORDERED THAT Defendant's Stipulation and Order Re: Extension of Time to Respond to
Complaint is granted.

Defendant(s) Extra Space Storage Inc.  may have until 4/24/2019 to file a responsive pleading in this
action.

Dated:  03/07/2019

_____

Judge Brad Seligman

Tycko & Zavareei LLP
Attn:  Soneji, Sabita J
1970 Broadway
#1070
Oakland, CA  94612

Boies Schiller Flexner LLP
Attn:  Ta, Quyen L.
1999 Harrison Street
Suite 900
Oakland, CA  94612____

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

Johnson

Plaintiff/Petitioner(s)

VS.

Extra Space Storage Inc.

Defendant/Respondent(s)
(Abbreviated Title)

No. <u>RG19004671</u>

Order

Complaint Business Tort/Unfair Business Practice

The Complex Determination Hearing was set for hearing on 03/12/2019 at 03:00 PM in Department 23 before the Honorable Brad Seligman.  The Tentative Ruling was published and has not been contested.

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows:  **COMPLEX DETERMINATION**

The Court designates this case as complex pursuant to Rule 3.400 et seq. of the California Rules of Court.  Counsel are advised to be familiar with the Alameda County Local Rules concerning complex litigation, including Rule 3.250 et seq. An order assigning the case to one of the three complex judges and an initial case management order will be issued.

COMPLEX CASE FEES

Pursuant to Government Code section 70616, any non-exempt party who has appeared in the action but has not paid the complex case fee is required to pay the fee within ten days of the filing of this order. The complex case fee is $1,000 for each plaintiff or group of plaintiffs appearing together and $1,000 PER PARTY for each defendant, intervenor, respondent or other adverse party, whether filing separately or jointly, up to a maximum of $18,000 for all adverse parties.  All payments must identify on whose behalf the fee is submitted. Please submit payment to the attention of the Complex Litigation Clerk located in the Civil Division at the Rene C. Davidson Courthouse, 1225 Fallon Street, Oakland, CA  94612.  Please make check(s) payable to the Clerk of the Superior Court.  Documents may continue to be filed as allowed under Local Rule 1.9.  Note that for those admitted pro hac vice, there is also an annual fee.  (Gov't Code section 70617.)

PROCEDURES

Calendar information, filings, and tentative rulings are available to the public at http://www.alameda.courts.ca.gov/domainweb/.   All counsel are expected to be familiar and to comply with pertinent provisions of the Code of Civil Procedure, the California Rules of Court, the Alameda County Superior Court Local Rules and the procedures outlined on the domain web page of the assigned department.

SERVICE OF THIS ORDER

Counsel for plaintiff(s) shall have a continuing obligation to serve a copy of this order on newly joined parties defendant not listed on the proof of service of this order and file proof of service. Each party defendant joining any third party cross-defendant shall have a continuing duty to serve a copy of this order on newly joined cross-defendants and to file proof of service.

Dated:  03/12/2019

facsimile

_____
Judge Brad Seligman

*Superior Court of California, County of Alameda*



*Notice of Assignment of Judge for All Purposes*

Case Number: RG19004671
Case Title:    Johnson  VS Extra Space Storage Inc.
Date of Filing: 01/28/2019

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**Pursuant to Rule 3.734 of the California Rules of Court and Title 3 Chapter 2 of the Local Rules of the Superior Court of California, County of Alameda, this action is hereby assigned by the Presiding Judge for all purposes to:**

| | |
|---|---|
| Judge: | **Brad Seligman** |
| Department: | **23** |
| Address: | **Administration Building** |
| | **1221 Oak Street** |
| | **Oakland  CA  94612** |
| Phone Number: | **(510) 267-6939** |
| Fax Number: | **0** |
| Email Address: | **Dept.23@alameda.courts.ca.gov** |

Under direct calendaring, this case is assigned to a single judge for all purposes including trial.

**Please note: In this case, any challenge pursuant to Code of Civil Procedure section 170.6 must be exercised within the time period provided by law.  (See Code Civ. Proc. §§ 170.6, subd. (a)(2) and 1013.)**

**NOTICE OF NONAVAILABILITY OF COURT REPORTERS:** Effective June 4, 2012, the court will not provide a court reporter for civil law and motion hearings, any other hearing or trial in civil departments, or any afternoon hearing in Department 201 (probate). Parties may arrange and pay for the attendance of a certified shorthand reporter. In limited jurisdiction cases, parties may request electronic recording.

Amended Local Rule 3.95 states: "Except as otherwise required by law, in general civil case and probate departments, the services of an official court reporter are not normally available. For civil trials, each party must serve and file a statement before the trial date indicating whether the party requests the presence of an official court reporter."

IT IS THE DUTY OF EACH PLAINTIFF AND CROSS COMPLAINANT TO SERVE A COPY OF THIS NOTICE IN ACCORDANCE WITH LOCAL RULES.

## General Procedures

Following assignment of a civil case to a specific department, all pleadings, papers, forms, documents and writings can be submitted for filing at either Civil Clerk's Office, located at the René C. Davidson Courthouse, Room 109, 1225 Fallon Street, Oakland, California, 94612, and the Hayward Hall of Justice, 24405 Amador Street, Hayward, California, 94544. All documents, with the exception of the original summons and the original civil complaint, shall have clearly typed on the face page of each document, under the case number, the following:

ASSIGNED FOR ALL PURPOSES TO
JUDGE Brad Seligman
DEPARTMENT 23

All parties are expected to know and comply with the Local Rules of this Court, which are available on the Court's website at: http://www.alameda.courts.ca.gov/Pages.aspx/Local-Rules(1)  and with the California Rules of Court, which are available at www.courtinfo.ca.gov.

Parties must meet and confer to discuss the effective use of mediation or other alternative dispute processes (ADR) prior to the Initial Case Management Conference.  The court encourages parties to file a "Stipulation to Attend ADR and Delay Initial Case Management Conference for 90 Days".  Plaintiff received that form in the ADR information package at the time the complaint was filed.  The court's Web site also contains this form and other ADR information.  If the parties do not stipulate to attend ADR, the parties must be prepared to discuss referral to ADR at the Initial Case Management Conference.

You may schedule case management hearings, law & motion hearings and other calendar events with Department 23 by EMAIL ONLY. The use of email is not a substitute for filing pleadings or filing other documents. You must provide copies of all email communications to each party (or the party's attorney if the party is represented) at the same time that you send the email to the Court and you must show that you have done so in your email. Courtesy copies of all moving, opposition and reply papers should be delivered directly to Dept. 23 in the Administration Building 1221 Oak St. 4th Floor Oakland, CA 94612.

## Schedule for Department 23

The following scheduling information is subject to change at any time, without notice. Please contact the department at the phone number or email address noted above if you have questions.

- Trials generally are held:  Mondays through Thursdays from 9:00 am - 1:30 pm.

- Case Management Conferences are held:  Tuesdays beginning at 3:00 pm.

- Asbestos Cases Fridays 9:15 am

- Law and Motion matters are heard:  Tuesdays beginning at 3:00 pm. Asbestos Cases Fridays 9:30 am; in exceptional circumstances, motions may be set at other times.

- Settlement Conferences are heard:  N/A

- Ex Parte matters are heard:  Tuesdays at 3:00 pm. Asbestos Cases Fridays 9:00 am

- Pro Hac Vice Process:  Applications for Pro Hac Vice must be submitted by noticed motion on regular time, or, if it is a time sensitive matter, a request for an order

shortening time must be submitted.  Applications will not be considered on an exparte basis. CRC 9.40.

## Law and Motion Procedures

To obtain a hearing date for a Law and Motion or ex parte matter, parties must contact the department as follows:

- Motion Reservations
  Email:         Dept23@alameda.courts.ca.gov

  Reservations by email only. No discovery motions will be scheduled prior to conference with the court. Email to schedule a conference.

- Ex Parte Matters
  Email:         Dept23@alameda.courts.ca.gov

  Reservations by email only.

## Tentative Rulings

The court may issue tentative rulings in accordance with the Local Rules.  Tentative rulings will become the Court's order unless contested in accordance with the Local Rules. Tentative rulings will be available at:

- Website:  www.alameda.courts.ca.gov/domainweb, Calendar Information for Dept. 23
- Phone:  1-866-223-2244

Dated:  03/13/2019

_Coy - S. Conk_
Facsimile

_____

Presiding Judge,
Superior Court of California, County of Alameda

---

### CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to this cause.  I served this Notice by placing copies in envelopes addressed as attached hereto and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 03/14/2019

By _____

Deputy Clerk

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Johnson  VS Extra Space Storage Inc. | RG19004671 |

ADDITIONAL ADDRESSEES

Tycko & Zavareei LLP
Attn:  Soneji, Sabita J
1970 Broadway
#1070
Oakland, CA   94612



20908618

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ALAMEDA

**FILED**
ALAMEDA COUNTY

MAR 1 4 2019

CLERK OF THE SUPERIOR COURT
By _____ Deputy

| | |
|---|---|
| JOHNSON,<br><br>        Plaintiffs | Case No. RG19004670<br><br>INITIAL CASE MANAGEMENT ORDER |
| EXTRA SPACE STORAGE INC.<br><br>        Defendants | ASSIGNED FOR ALL PRE-TRIAL<br>PURPOSES  TO: JUDGE BRAD<br>SELIGMAN, DEPARTMENT 23 |

The following order shall apply to all parties in this action:

1.   CASE MANAGEMENT CONFERENCES

At Case Management Conferences the Court will address discovery issues, schedules, and other subjects pursuant to CRC 3.750.  Counsel thoroughly familiar with the case shall attend the Case Management Conferences.  See LRC, Rule 3.290.

At the Initial CCMC, the parties must be prepared to discuss at length the nature of the case, both factually and legally, as well as the projected management of the case at each stage.  This is not a perfunctory exercise.  The primary objective of the CCMC is to develop a comprehensive plan for a just, speedy and economical determination of the litigation.

Courtesy copies of statements must be delivered directly to Dept. 23.  The filing and delivery date is not later than five court days before the conference.

The Court strongly prefers joint CCMC statements prepared in narrative form, and not using Form CM-110, after counsel have met and conferred as required by CRC 3.724.  CCMC statements must address the following issues when applicable:

1

A. A brief factual summary to assist the Court in understanding the background of the case, a statement of the issues presented, including each theory of liability and defense and a summary of the facts supporting each position taken, and the relief sought, including an estimate of damages.

B. The number of parties and their posture, including a proposed structure of representation, (e.g., liaison/lead counsel or by committee) if applicable;

C. Deadlines and limits on joinder of parties and amended or additional pleadings;

D. Class discovery and class certification, if applicable;

E. A proposed schedule for the conduct of the litigation including, but not limited to, a discovery plan, a plan for hearing remaining law and motion, and a projected trial date;

F. An identification of all potential evidentiary issues involving confidentiality or protected evidence;

G. A detailed description of the procedural posture of the case, describing any outstanding procedural problems, including, but not limited to:

(1) unserved parties and the reasons for the failure to serve;

(2) unserved and/or unfiled cross-complaints;

(3) related actions pending in any jurisdiction and the potential for coordination or consolidation;

(4) any possible jurisdictional or venue issues that may arise;

(5) the status of discovery, including a description of all anticipated discovery and incomplete or disputed discovery issues;

2

(6) unresolved law and motion matters;

(7) requests for, or opposition to, any ADR proceedings, including but not limited to mediation, judicial or contractual arbitration;

(8) severance of issues for trial; and

(9) calendar conflicts for any attorney, witness, or party, and any other matter which may affect the setting of a trial date.

H. Counsel may make suggestions for streamlining the litigation, including, but not limited to, a master file system, designation of lead counsel [for plaintiff(s) and/or defendant(s)] to streamline service of process and/or management of discovery, the use of e-filing, and the use of a web-page maintained by lead counsel for the purpose of posting the litigation schedule and agenda. Counsel may also address ways of structuring the trial of the action such as bifurcation, severance, bell-weather trials, use of special masters, use of expedited jury procedures and/or waiver of jury.

Parties are advised to check the court's register of action before appearing at any case management conference, including the Initial Case Management, at least one day before any scheduled appearance to determine if the court has issued a tentative case management order.  If published, this tentative case management order will become the order of the Court unless counsel or self represented party notifies the Court and opposing counsel/self-represented party by email not less than one court day prior to the CMC that s/he intends to appear in person at the CMC to discuss some aspect of the order, and specifies the nature of the party's concern. (Please note that the Tentative Rulings posted on the website are for tentative rulings on law and motion matters and will not display tentative Case Management Orders. The tentative Case Management

Orders are found in the Register of Action). Department 23 may be reached at Dept.23@alameda.courts.ca.gov.

### 2. NOTICE OF FEE CHANGES - JURY TRIAL FEE

Effective July 2, 2012, the advance jury fee is fixed at $150.00, and is no longer refundable.  With certain exceptions, the jury trial fee is due on ,or before the date scheduled for the initial case management conference. See, C.C.P. 631(b).

### 3. DISCOVERY

Discovery Conference: Motions related to discovery (i.e. motions to compel, protective orders etc.) may not be filed without leave of the court until after an informal discovery conference pursuant to revised Local Rule 3.31 (January 1, 2019) except a party may request a discovery conference in a Case Management Conference Statement. The discovery conference is not a pro forma step before a motion.  Requests for a discovery conference may be made, after meaningful meet and confer, by sending an email to the department clerk, copied to all counsel. The court will provide proposed dates.  Parties are to meet and confer as to availability for the proposed dates. If one or more parties are not available on the proposed date(s), additional dates may be requested. Upon request, the court will consider telephonic appearances as well as calls from depositions in progress.

### 4.   EMAILS TO COURT

Emails to the court are not part of the court record in this case and may be deleted without notice.  Email is not a substitute for required filings. Any emails should be copied to all counsel. The Department 23 email may only be used for the following purposes: to seek a reservation to schedule a proceeding on the court's calendar, to give

4

notice that a hearing has been dropped or a settlement reached, to request a discovery conference, emergency scheduling issues (i.e. running late to a hearing), to give notice that a litigant intends to appear to contest a tentative ruling, to reply to an inquiry from the clerk or research attorney of Department 23, to communicate with the courtroom clerk regarding department 23 procedures, or other matters that the court has expressly authorized in this case.

**5.** Pro Hac Vice Process

Applications for Pro Hac Vice must be submitted by noticed motion on regular time, or, if it is a time sensitive matter, a request for an order shortening time must be submitted. Applications will not be considered on an ex parte basis. CRC 9.40.

6.  NOTICE

Parties are advised that CASE MANAGEMENT ORDERS, including trial setting orders, and FINAL RULINGS ON LAW AND MOTION that are issued by Dept. 23 will be published in the Court's website in the Register of Action for this case. The clerk of the court WILL NOT serve each party a copy of future orders. Instead, unless otherwise ordered, counsel shall obtain copies of all future orders from the Register of Action in this case.

SERVICE OF THIS ORDER

Counsel for plaintiff(s) shall have a continuing obligation to serve a copy of this order on newly joined parties defendant not listed on the proof of service of this order and file proof of service. Each party defendant joining any third party cross-defendant shall have a continuing duty to serve a copy of this order on newly joined cross-defendants and to file proof of service. The clerk is directed to serve a copy of this CASE MANAGEMENT ORDER upon counsel for Plaintiff(s).

DATED: March 14, 2019

_____

BRAD SELIGMAN, JUDGE

---

## CLERK'S CERTIFICATE OF SERVICE

I certify that I am not a party to this cause and that a true and correct copy of the foregoing document was mailed first class, postage prepaid, in a sealed envelope, addresses shown below, and that the mailing of the foregoing and execution of this certificate occurred at 1225 Fallon Street, Oakland, California.

Dated: March 14, 2019

*Jhalisa Castaneda*
Courtroom Clerk, Dept. 23

Sabita J. Soneji
Tanya Koshy
Tycko & Zavareei LLp
1970 Broadway, Suite 1070
Oakland, CA 94612

Sabita J. Soneji
ssoneji@tzlegal.com
Tanya Koshy
tkosky@tzlegal.com

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| **Johnson** | No. RG19004671 |
| Plaintiff/Petitioner(s) | |
| VS. | **Minutes** |
| **Extra Space Storage Inc.** | |
| Defendant/Respondent(s) | |
| **(Abbreviated Title)** | |

Department    23                        Honorable   Brad Seligman                    , Judge

Cause called for: Complex Determination Hearing on March 12, 2019.

COMPLEX DETERMINATION

The Court designates this case as complex pursuant to Rule 3.400 et seq. of the California Rules of Court.  Counsel are advised to be familiar with the Alameda County Local Rules concerning complex litigation, including Rule 3.250 et seq. An order assigning the case to one of the three complex judges and an initial case management order will be issued.

COMPLEX CASE FEES

Pursuant to Government Code section 70616, any non-exempt party who has appeared in the action but has not paid the complex case fee is required to pay the fee within ten days of the filing of this order. The complex case fee is $1,000 for each plaintiff or group of plaintiffs appearing together and $1,000 PER PARTY for each defendant, intervenor, respondent or other adverse party, whether filing separately or jointly, up to a maximum of $18,000 for all adverse parties.  All payments must identify on whose behalf the fee is submitted. Please submit payment to the attention of the Complex Litigation Clerk located in the Civil Division at the Rene C. Davidson Courthouse, 1225 Fallon Street, Oakland, CA  94612.  Please make check(s) payable to the Clerk of the Superior Court.  Documents may continue to be filed as allowed under Local Rule 1.9.  Note that for those admitted pro hac vice, there is also an annual fee.  (Gov't Code section 70617.)

PROCEDURES

Calendar information, filings, and tentative rulings are available to the public at http://www.alameda.courts.ca.gov/domainweb/.   All counsel are expected to be familiar and to comply with pertinent provisions of the Code of Civil Procedure, the California Rules of Court, the Alameda County Superior Court Local Rules and the procedures outlined on the domain web page of the assigned department.

SERVICE OF THIS ORDER

Counsel for plaintiff(s) shall have a continuing obligation to serve a copy of this order on newly joined parties defendant not listed on the proof of service of this order and file proof of service. Each party defendant joining any third party cross-defendant shall have a continuing duty to serve a copy of this order on newly joined cross-defendants and to file proof of service.

---

**Minutes**

Minutes of    03/12/2019
Entered on    03/15/2019

      Chad Finke  Executive Officer / Clerk of the Superior Court

By _____

                                           Deputy Clerk

---

**Minutes**

1    Sabita J. Soneji (CA Bar No. 224262)
2    Tanya Koshy (CA Bar No. 277095)
     **TYCKO & ZAVAREEI LLP**
3    1970 Broadway, Suite 1070
     Oakland, CA 94612
4    Telephone: (510) 254-6808
     Facsimile: (202) 973-0950
5    ssoneji@tzlegal.com
6    tkoshy@tzlegal.com

7
     *Counsel for Plaintiffs and the Proposed Class*
8

9                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                           **COUNTY OF ALAMEDA**

11

12   ALEXANDRU IONESCU, LENAY
     JOHNSON, AND LAMAR MOSLEY,                    Case No. RG19004671
13   individually and on behalf of themselves and all
     others similarly situated,                    (JURY TRIAL DEMANDED)
14                          Plaintiffs,
15                   v.                             **AMENDED CLASS ACTION
                                                    COMPLAINT**
16   EXTRA SPACE STORAGE INC.,

17                          Defendant.

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs Alexandru Ionescu, Lenay Johnson, and Lamar Mosley ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this Class Action Complaint against Defendant Extra Space Storage Inc. ("Extra Space" or "Defendant"). Plaintiffs, by their counsel, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves, which are based on personal knowledge.

## INTRODUCTION

1.      Extra Space engages in a deceptive bait-and-switch scheme: It lures consumers into leasing Extra Space's storage units by advertising competitive rental rates, while hiding the fact that it will hike up those rental rates shortly after consumers have signed leases.

2.      Extra Space advertises rental rates for its storage units without describing them as "promotional" or "introductory," giving the impression to consumers that these rates are the true rental rates and represent what they will pay if they sign leases.

3.      While Extra Space represents to consumers that it may raise rental rates to keep up with "rising costs," it discloses to investors and other industry stakeholders that it raises rental rates to generate more profit.

4.      Indeed, while Extra Space hikes up a consumer's rental rate after she signs a lease, it continues to advertise a lower rate for the same size unit to lure other consumers into signing leases.

5.      Extra Space knows that reasonable consumers would be unlikely to sign leases with Extra Space if they knew that the rental rates to which they agreed in their leases were only temporary and that Extra Space planned to increase their rates in a matter of months to generate additional profit, not in order to keep with up "rising costs."

6.      Extra Space also knows that it can increase rental rates after reasonable consumers have signed leases, because, at that point, reasonable consumers—who have paid non-refundable administration fees, organized their belongings, and paid for moving costs—are unlikely to terminate their leases and restart the process with other storage facilities.

7.      By advertising competitive rental rates, increasing those rates after a consumer has expended substantial time and money, and falsely representing that rate increases will only arise if there are "rising costs," Extra Space has raked in millions of dollars in revenue at the expense of consumers.

8.      Plaintiffs bring this lawsuit on behalf of themselves and the class of consumers who suffered damages after they rented storage units with Extra Space that they would not have otherwise rented, at rates to which they would otherwise not have agreed, had they not been drawn in by Extra Space's advertised rental rates.

9.      Extra Space's misleading bait-and-switch scheme constitutes false and misleading advertising in violation of California's Unfair Competition Law (the "UCL") (Cal. Bus. & Prof. Code § 17200), California's False Advertising Law (the "FAL") (Cal. Bus. & Prof. Code § 17500), and California's Consumer Legal Remedies Act (the "CLRA") (Cal. Civ. Code §§ 1750 *et seq.*).

## THE PARTIES

10.      Plaintiff Alexandru Ioenscu is a resident of San Diego, California.

11.      Plaintiff Lenay Johnson is a resident of Hawthorne, California.

12.      Plaintiff Lamar Mosley is a resident of Oakland, California.

13.      Defendant Extra Space, Inc. is a Maryland corporation with its headquarters and principal place of business in Utah.

## JURISDICTION AND VENUE

14.      This Court has personal jurisdiction over Extra Space because Extra Space has sufficient minimum contacts with the state of California and Plaintiffs' claims arise from those minimum contacts. Specifically, Plaintiffs' claims against Extra Space arise out of its conduct within the State of California.

15.      This Court has subject matter jurisdiction over this class action pursuant to Code of Civ. Proc. § 410.10, Bus. & Prof. Code § 17204, and the California Constitution.

16.      Venue is proper in the Superior Court for the County of Alameda, in that Extra Space transacted business within the County, and many of the alleged unlawful acts and omissions likely took place within this County.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

17.      Extra Space, the second largest storage facility company in the country, employs a deceptive bait-and-switch scheme to lure in consumers.

18.      Extra Space advertises competitive rental rates for its storage units to entice consumers to sign leases.

19.     But Extra Space's advertised rental rates are false promises. Extra Space claims on its website and in person that it increases rental rates "in order to keep up with the rising costs associated with providing top-notch service and a clean, secure facility."[1]

20.     But once a consumer signs a lease, Extra Space increases the rate within months, irrespective of any "rising costs," while continuing to advertise the same-size unit for the lower rate to other consumers.

21.     Because Extra Space continues to advertise the lower rate for the same-size unit, it is apparent that Extra Space's frequent rental rate increases are not based on "rising costs."

22.     Extra Space knows that by the time Extra Space's deceptive bait-and-switch scheme is revealed, consumers have already invested the time, effort, and money to pack, transport, and store their belongings, and are unlikely to move.

23.     Moreover, Extra Space requires consumers who rent storage units to obtain insurance and pay a one-time, non-refundable administration fee. Given those costs, consumers who rent storage units are even less likely to move their belongings to another company's storage facility, despite advanced notice of Extra Space's rental rate increase.

24.     Indeed, Extra Space's executive leadership acknowledges that its deceptive bait-and-switch scheme is dependent on consumers having already invested substantial resources, because at that point, they are unlikely to move, even when they receive the notice of a rental rate increase.

25.     In an article for SpareFoot, a storage industry website, Extra Space's former Chief Executive Officer, Spencer F. Kirk, acknowledged that consumers will simply absorb a rental increase because of the time and money already spent:

> Kirk said that the vast majority of Extra Space customers absorb the rental rate increases without moving out.
>
> "We are hitting the sweet spot," Kirk said regarding the company's rate increases on existing customers. **Extra Space is able to raise rates on customers up to 10 percent with little pushback**, he said.
>
> "**Let's be realistic about this. If you are renting a unit and you find out your rent is going up $15, you are not likely to rent a U-Haul truck, pack up your**

---

[1] (Extra Space Storage, *Is my price guaranteed for as long as I rent?*, Frequently Asked Questions <https://www.extraspace.com/Storage/Questions.aspx> [as of Jan. 28, 2019].)

**stuff, go down the street, unpack your stuff and return the truck just to save 15 bucks,**" Kirk said, "Most people won't go through the effort to do that."

Harris, *Extra Space finds "sweet spot" on rent increases* (May 3, 2016) SpareFoot, attached as Exhibit A (emphasis added).

26.     Extra Space also discloses to its investors that raising rents is a substantial part of its revenue growth strategy, and is not related to "rising costs." In a call to investors to discuss its fourth quarter and year-end earnings for 2017, Extra Space's Chief Executive Officer Joseph Margolis explained that "[s]trong occupancy together with **increased rental rates to new and existing customers led to same-store revenue growth** for the year of 5.1%, [net operating income] growth of 6.9% . . . ."[2]

27.     Such false and misleading advertising, where the deception is revealed only after a consumer has invested resources to rent a storage unit, is actionable under California consumer protection laws.

28.     Extra Space's deceptive pricing practices also divert business to Extra Space that would have otherwise gone to its competitors.

29.     Rental rates of storage units leased by Extra Space are material to consumers. And the fact that Extra Space advertises a rental rate for a storage unit and then increases the rate months after a consumer signs a lease—while still advertising the same lower rate for the same-size unit—is also material to consumers.

30.     Unsurprisingly, many consumers have been duped by Extra Space's bait-and-switch advertising into leasing storage units from Extra Space.

31.     Consumers nationwide have complained, in a consistent fashion, about Extra Space's bait-and-switch scheme:

---

[2] (Extra Space Storage Q4 Earnings Call Transcript (Feb. 21, 2018) Seeking Alpha <https://seekingalpha.com/article/4149161-extra-space-storages-exr-ceo-joseph-margolis-q4-2017-results-earnings-call-transcript?part=single> [as of Jan. 28. 2019] ["We projected 2017 would be characterized by a gradual return towards historical and sustainable revenue and NOI growth levels. That is exactly what happened. Strong occupancy together with increased rental rates to new and existing customers led to same-store revenue growth for the year of 5.1%, NOI growth of 6.9% and core FFO growth of 13.8%."]; *see also id.* ["Throughout the quarter, we increased rates to new customers in the low to mid single digits, and we continue our existing customer rate increase program without changes."].)

"I rented a unit about 3 months ago and just got a notice in the mail let me know they were increasing my rent by 58%. **I was paying $224 a month and they want $354 now! I went online and the online price for the same unit is $42 a month cheaper.** I went in to try to have them fix this and they were unable to do anything stating that supply and demand caused the rate hike. Be warned that their rates posted will go massively up without little to no warning."
– Jason of Placentia, CA (April 5, 2018)[3]

***

"I have been with this rip off company for too many years. **I'm sick and tired of the price changes every six months.** I think I'm going to call my local news WAVYTV10 and ask them to do a report. I suggest anyone who sees this and know what I'm talking about does the same. I have never been with a company who does this. I'm in the military I pay on time and have been with them forever. The facility I am in is nice and fairly convenient to where I live. This price jacking is insane! Please report them to every possible social media and consumer reports avenue.:
– Tameaka of Virginia Beach, VA (August 23, 2018)[4]

***

"**New place and have low monthly rates to start BUT, I just got a 15% increase in monthly rate after being there only 5 months**. So, Chicago has no protections on rent increases and **storage companies know that you must rent a truck and move the stuff out.** Also, I have had many times at this location where I can not [sic] get into the garage space because moving companies are allowed to block the garage from other paying customers."
– Victor Z. of Chicago, IL (April 5, 2017)[5]

32.     All consumers who have been enticed into leasing storage units from Extra Space by the pricing practices described in this Complaint have suffered damage as a result of Extra Space's bait-and-switch advertising. Plaintiffs bring this action to represent those consumers who leased from Extra Storage and suffered damages in the amount of the difference between the increased rental rates and the original rental rates to which Plaintiffs and Class members agreed in their leases, in amounts that will be proven at trial.

## THE EXPERIENCES OF THE NAMED PLAINTFFS

### *Plaintiff Lamar Mosley*

33.     Plaintiff Lamar Mosley rented a storage unit in April 2018 at Extra Space's facility located at 6401 San Leandro Street, Oakland, California 94621 at a monthly rate of $127. Mr. Mosley needed a storage unit because he had recently moved from Lathrop, California to Oakland, California,

---

[3] (Extra Space Storage, Consumer Affairs < https://www.consumeraffairs.com/movers/extra-space-self-storage.html?page=2> [as of Jan. 28, 2019].)
[4] (Extra Space Storage, Consumer Affairs <https://www.consumeraffairs.com/movers/extra-space-self-storage.html> [as of Jan. 28, 2019].)
[5] (Extra Space Storage, Yelp <*available at* https://www.yelp.com/biz/extra-space-storage-chicago-34?osq=Extra+Space+Storage> [as of Jan. 28, 2019].)

and his new home in Oakland could not hold all of his and his family's belongings. Though there were storage facilities closer to his home, Mr. Mosley rented with Extra Space because of its competitive pricing. At the time he was considering renting with Extra Space, an Extra Space employee at the 6401 San Leandro Street location advised that Mr. Mosley could either get a free month's rent or commit to a low rate if he rented "long term." The employee also advised that Extra Space would not arbitrarily raise rates and would only raise his rate to cover costs.

34.     Five months later, in September 2018, Mr. Mosley's rate went up from $127 to $146. Mr. Mosley did not get any notice of the rental increase. Rather, Mr. Mosley received an email from Extra Space notifying him of his new billing statement, which included the increased rental rate.

35.     Because of the expense and time it would take to find a new storage facility and move his belongings from Extra Space to another facility, Mr. Mosley continued to rent with Extra Space despite the rate increase.

36.     Extra Space's deceptive advertised rental rate was a substantial factor in causing Mr. Mosley's decision to lease a unit.

37.     That is, if Mr. Mosley had known at the time he rented that Extra Space had a practice of increasing rental rates for all consumers who rent storage units within a few months, for reasons unrelated to rising costs, he would not have rented with Extra Space.

38.     Moreover, if Mr. Mosley had known that the purpose of the increase in his rental rate was to increase profits, not to keep up with rising costs as represented, he would not have continued to lease a storage unit with Extra Space.

39.     Because of Extra Space's past deception, Mr. Mosley will be unable to rely on Extra Space's advertising in the future. As a result, he will not lease another unit, even though he would like to.

40.     If Extra Space's true rental rate was advertised from the outset, and did not increase for reasons other than rising costs as represented, Mr. Mosley would likely lease a unit with Extra Space in the future.

### Plaintiff Lenay Johnson

41.     Plaintiff Lenay Johnson rented a storage unit in March 2018 at Extra Space's facility

AMENDED CLASS ACTION COMPLAINT

located at 17575 S. Western Avenue, Gardena, California, 90248 at a monthly rate of $205. Ms. Johnson needed a storage unit because she had recently moved in with her mother.

42.    Ms. Johnson was told by an Extra Space employee at the at 17575 S. Western Avenue, Gardena, California, 90248 location that her rate would only go up because of rising costs.

43.    Four months later, in July 2018, Ms. Johnson received a postcard in the mail notifying her that her rate would go up from $205 to $236 on August 17, 2018.

44.    Because of the expense and time it would take to find a new storage facility and move her belongings from Extra Space to another facility, Ms. Johnson continued to rent with Extra Space despite the increase.

45.    Extra Space's deceptive advertised rental rate was a substantial factor in causing Ms. Johnson's decision to lease a unit.

46.    That is, if Ms. Johnson had known at the time she rented that Extra Space had a practice of increasing rental rates within a few months for all consumers who rent storage units, for reasons unrelated to rising costs, she would not have rented with Extra Space.

47.    Moreover, if Ms. Johnson had known that the purpose of the increase in her rental rate was to increase profits, not to keep up with rising costs as represented, she would not have continued to lease a storage unit with Extra Space.

48.    Because of Extra Space's past deception, Ms. Johnson will be unable to rely on Extra Space's advertising in the future. As a result, she will not lease another unit, even though she would like to.

49.    If Extra Space's true rental rate was advertised from the outset, and did not increase for reasons other than rising costs as represented, Ms. Johnson would likely lease a unit with Extra Space in the future.

### Plaintiff Alexandru Ionescu

50.    Plaintiff Alexandru Ionescu rented a storage unit in June 2017 at Extra Space's facility located at 3808 Cedar Street, San Diego, California 92105 at a rate of $70. Mr. Ionescu is a member of the United States Navy in its Helicopter Maritime Strike Squadron Seven Five. Mr. Ionescu needed a storage unit while he was deployed from June 5, 2017 to December 5, 2017 on the USS Nimitz to the

Middle East and Japan.

51.    Mr. Ionescu was told by an Extra Space employee that his rate would only go up to account for rising costs.

52.    Months after he first signed a lease, Mr. Ionescu received notice that his rate would go up to $75 on November 1, 2017.

53.    Because he was deployed, Mr. Ionescu had no way of moving his belongings from Extra Space to another facility. As such, Mr. Ionescu continued to rent with Extra Space despite the increase.

54.    Extra Space's deceptive advertised rental rate was a substantial factor in causing Mr. Ionescu's decision to lease a unit.

55.    In other words, if Mr. Ionescu had known at the time he rented that Extra Space had a practice of increasing rental rates for all customers within a few months unrelated to rising costs, he would not have rented with Extra Space.

## CLASS ACTION ALLEGATIONS

56.    Plaintiffs bring this action on behalf of themselves and the class defined as follows:

> All persons residing in the United States who signed leases for storage units in California from Extra Space Storage from January 28, 2015 to present.

57.    The questions here are ones of common or general interest to class members. These questions predominate over questions that may affect only individual class members because Extra Space has acted on grounds generally applicable to the class.  Such common legal or factual questions include, but are not limited to:

a.    Whether Defendant's pricing practices were and are likely to mislead consumers;

b.    Whether Defendant's representations, including on its website, that increases in rental rates are related to "rising costs" are false and misleading;

c.    Whether Defendant knew or should have known that its pricing practices were and likely to mislead consumers;

d.    Whether Defendant knew or should have known that its advertised prices for its storage units were and are false and/or misleading;

e.   Whether Defendant made and continues to make false or misleading statements of fact concerning advertised rental rates;

f.   Whether Defendant made and continues to make false or misleading statements of fact concerning the circumstances under which it will increase its rental rates;

g.   Whether the facts Defendant failed and continues to fail to disclose in its advertising were and are material;

h.   Whether reliance on Defendant's misrepresentations and omissions is presumed;

i.   Whether Defendant's acts alleged herein were unlawful;

j.   Whether Defendant's acts alleged herein were and are unfair;

k.   Whether consumers suffered and continue to suffer damage as a result of Defendant's acts alleged herein;

l.   The extent of the damage suffered by consumers as a result of Defendant's acts alleged herein;

m.  Whether Defendant should be enjoined from continuing to advertise as alleged herein.

58.   Members of the class are so numerous that joinder is impracticable.  While the exact number of class members is unknown to Plaintiffs, it is believed that the class comprises thousands of members geographically disbursed throughout California.

59.   It is impracticable to bring Class members' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender.  The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

60.   Plaintiffs' claims are typical of the members of the class and all subclasses, as all members of the class are similarly affected by Extra Space's actionable conduct.  Plaintiffs and all members of the class leased storage units with Extra Space in California. In addition, Extra Space's

conduct that gave rise to the claims of Plaintiffs and members of the class (*i.e.* advertising a rental rate and then increasing the rate after Plaintiffs signed leases without any connection to rising costs) is the same for all members of the class.

61.     Plaintiffs will fairly and adequately protect the interests of the class because they have no interests antagonistic to, or in conflict with, the class that Plaintiffs seeks to represent.  Furthermore, Plaintiffs have retained counsel experienced and competent in the prosecution of complex class action litigation, particularly that involving false and misleading advertising.

62.     Plaintiffs know of no difficulty to be encountered in this action that would preclude its maintenance as a class action.

63.     Extra Space has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Violations of False Advertising Law (California Business and Professions Code section 17500)**
**(By Plaintiffs and on Behalf of the Class)**

64.     Plaintiffs repeat and reallege each and every fact, matter, and allegation set forth above and incorporates them at this point by reference as though set forth in full.

65.     Defendant's acts alleged herein violate California Business and Professions Code section 17500. Defendant acted knowingly, recklessly, and in conscious disregard of the true facts in perpetuating its deceptive advertising scheme and causing injuries to Plaintiffs and the Class.

66.     Plaintiffs and the Class have been misled and unfairly induced to enter into transactions and to overpay for the lease of storage units. As a result of Defendant's false and misleading pricing practices, misrepresentations, and omissions, Plaintiffs and the Class have been injured in amounts not less than the difference between any increase in their rental rates and the original rental rates to which Plaintiffs and Class members agreed in their leases, but which are believed to exceed the hundreds of thousands, or possibly millions, of dollars in the aggregate. These amounts have been paid to Defendant by Plaintiffs and the Class and should be restored to them.

**SECOND CAUSE OF ACTION**

**Violations of Unfair Competition Law (California Business and Professions Code section 17200)**

**(By Plaintiffs Johnson and Mosley and on Behalf of the Class)**

67.     Plaintiffs Johnson and Mosley repeat and reallege each and every fact, matter, and allegation set forth above and incorporates them at this point by reference as though set forth in full.

68.     Defendant has engaged in business acts and practices that, as alleged above, constitute unfair competition in violation of Business and Professions Code section 17200. Specifically, Defendant's acts alleged herein are unfair and likely to deceive the general public, and Defendant's acts alleged herein are unlawful in that they violate California Business and Professions Code section 17500 (false and misleading advertising), and California Civil Code sections 1770(a)(9), (13), and (14) (CLRA), as well as other federal and state statutes and regulations.

69.     As a result of Defendant's unfair, fraudulent, and unlawful business practices alleged herein, Plaintiffs Johnson and Mosley and the Class have been injured in amounts not less than the difference between any increase in their rental rates and the original rental rates to which Plaintiffs Johnson and Mosley and Class members agreed in their leases, which amounts have not yet been ascertained but which are believed to exceed the hundreds of thousands, or possibly millions, of dollars in the aggregate. These amounts have been paid to Defendant by Plaintiffs Johnson and Mosley and the Class and should be restored to them.

70.     If Defendant is permitted to continue to engage in the unlawful, unfair, and fraudulent pricing practices described above, its conduct will engender further injury, expanding the number of injured members of the public beyond its already large size, and will tend to render any judgment at law, by itself, ineffectual. Under such circumstances, Plaintiffs Johnson and Mosley and the Class have no adequate remedy at law in that Defendant will continue to engage in the wrongful conduct alleged herein, thus engendering a multiplicity of judicial proceedings. Plaintiffs Johnson and Mosley and the Class request and are entitled to injunctive relief, enjoining Defendant from continuing to engage in the unfair, unlawful, and fraudulent advertising described herein.

## THIRD CAUSE OF ACTION

### Violations of the California Consumers Legal Remedies Act
### (By Plaintiffs and on Behalf of the Class)

71.     Plaintiffs repeat and realleges each and every fact, matter, and allegation set forth above and incorporates them at this point by reference as though set forth in full.

72.     At all relevant times, Plaintiffs were "consumers" as defined by California Civil Code section 1761(d).

73.     At all relevant times, Defendant's storage units constituted "goods" as defined by California Civil Code section 1761(a).

74.     At all relevant times, Defendant constituted a "person" as defined by California Civil Code section 1761(c).

75.     At all relevant times, Plaintiffs and each of the Class member's purchases of Defendant's goods constituted a "transaction" as defined by California Civil Code section 1761(e).

76.     The CLRA provides that it is unlawful to: (i) advertise goods or services with the intent not to sell them as advertised; and (ii) represent that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law. Cal. Civ. Code §§ 1770(a)(9), (14). Defendant's acts alleged herein violate the CLRA.

77.     Plaintiffs, on behalf of themselves and the Class, seeks an order enjoining Defendant's unfair or deceptive acts or practices, equitable relief, an award of attorneys' fees and costs under Cal. Civ. Code § 1780(e). Plaintiffs Mosley and Johnson, on behalf of themselves and the Class, further request damages under Cal. Civ. Code § 1780(d).

78.     Plaintiff Ionescu reserves the right to give statutory written notice of this claim via certified mail, and to thereafter seek damages via an amended complaint.

**WHEREFORE,** Plaintiffs pray for judgment as follows:

### ON THE FIRST AND SECOND CAUSES OF ACTION

79.     For an order requiring Defendant to restore monies that Defendant acquired from Plaintiffs and Class members in the amount not less than the difference between any increase in

Plaintiffs and Class Members' rental rates and the original rental rates to which Plaintiffs and Class members agreed in their leases;

80.     Interest on all such sums restored at the maximum legal rate;

81.     For an order or orders enjoining Defendant from continuing to employ unfair methods of competition and commit unfair and deceptive acts and practices alleged in this complaint and any other acts and practices proven at trial;

82.     For an award of attorneys' fees to Plaintiffs' counsel pursuant to section 1021.5 of the California Code of Civil Procedure;

83.     For costs of suit incurred in this action; and

84.     For such other and further relief as the Court may deem just and proper.

### ON THE THIRD CAUSE OF ACTION

85.     For an order or orders enjoining Defendant from continuing to employ unfair methods of competition and commit unfair and deceptive acts and practices alleged in this complaint and any other such acts and practices proven at trial;

86.     For an award of damages, costs, and attorneys' fees to Plaintiffs' counsel pursuant to California Civil Code section 1780(d) and California Code of Civil Procedure section 1021.5;

87.     For such other and further relief as the Court may deem just and proper.

### JURY DEMAND

Plaintiffs hereby demand a jury trial in the instant action.

Dated:  March 25, 2019                              Respectfully submitted,

Sabita J. Soneji (CA Bar No. 224262)
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950
ssoneji@tzlegal.com

1  Sabita J. Soneji (CA Bar No. 224262)
2  Tanya Koshy (CA Bar No. 277095)
   **TYCKO & ZAVAREEI LLP**
3  1970 Broadway, Suite 1070
   Oakland, CA 94612
4  Telephone: (510) 254-6808
   Facsimile: (202) 973-0950
5  ssoneji@tzlegal.com
6  tkoshy@tzlegal.com

7
   *Counsel for Plaintiffs and the Proposed Class*
8

9              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                          **COUNTY OF ALAMEDA**

11

12  ALEXANDRU IONESCU, LENAY
    JOHNSON, AND LAMAR MOSLEY,
13  individually and on behalf of themselves and all        Case No. RG19004671
    others similarly situated,
14                                                           (JURY TRIAL DEMANDED)
                            Plaintiffs,
15              v.                                           **DECLARATION OF LENAY**
                                                             **JOHNSON**
16  EXTRA SPACE STORAGE INC.,

17                          Defendant.

18

19

20

21

22

23

24

25

26

27

28

I, Lenay Johnson, declare that:

1. I have personal knowledge of the facts stated herein, and could and would testify competently thereto if sworn as a witness.

2. I am a resident of the County of Los Angeles, State of California. The transaction(s) in which I was involved in that give rise to the causes of action in the complaint took place in the County of Los Angeles.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

       Executed on March 25, 2019 in Hawthorne, California



LENAY JOHNSON

1   Sabita J. Soneji (CA Bar No. 224262)
2   Tanya Koshy (CA Bar No. 277095)
    **TYCKO & ZAVAREEI LLP**
3   1970 Broadway, Suite 1070
    Oakland, CA 94612
4   Telephone: (510) 254-6808
    Facsimile: (202) 973-0950
5   ssoneji@tzlegal.com
6   tkoshy@tzlegal.com

7
    *Counsel for Plaintiffs and the Proposed Class*
8

9             SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                        COUNTY OF ALAMEDA

11

12   ALEXANDRU IONESCU, LENAY
     JOHNSON, AND LAMAR MOSLEY,
13   individually and on behalf of themselves and all      Case No. RG19004671
     others similarly situated,
14                                                          (JURY TRIAL DEMANDED)
                              Plaintiffs,
15              v.                                          **DECLARATION OF LAMAR
                                                            MOSLEY**
16   EXTRA SPACE STORAGE INC.,

17                            Defendant.

18

19

20

21

22

23

24

25

26

27

28

DocuSign Envelope ID: 8CF32A3E-8EB5-49A1-B44B-B1E6EA4E33A5

I, Lamar Mosley, declare that:

1. I have personal knowledge of the facts stated herein, and could and would testify competently thereto if sworn as a witness.

2. I am a resident of the County of Alameda, State of California. The transaction(s) in which I was involved in that give rise to the causes of action in the complaint took place in the County of Alameda.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

       Executed on March 25, 2019 in Oakland, California

Lamar Mosley

# EXHIBIT A

This is Google's cache of https://www.sparefoot.com/self-storage/news/4015-extra-space-starts-2016-strong/ (https://www.sparefoot.com/self-storage/news/4015-extra-space-starts-2016-strong/). It is a snapshot of the page as it appeared on Sep 26, 2018 09:54:30 GMT. The current page (https://www.sparefoot.com/self-storage/news/4015-extra-space-starts-2016-strong/) could have changed in the meantime. Learn more. (http://support.google.com/websearch/bin/answer.py?hl=en&p=cached&answer=1687222)

**Full version**    Text-only version (http://webcache.googleusercontent.com/search?q=cache:eZAWYaNNVCUJ:https://www.sparefoot.com/self-storage/news/4015-extra-space-starts-2016-

Tip: To quickly find your search term on this page, press **Ctrl+F** or **⌘-F** (Mac) and use the find bar.

# Extra Space finds "sweet spot" on rent increases

by Alexander Harris (https://www.sparefoot.com/self-storage/news/author/alexander-harris/) on May 3, 2016 (https://www.sparefoot.com/self-storage/news/4015-extra-space-starts-2016-strong/)

After buying up more 170 self-storage locations for more than $1.7 billion last year, Salt Lake City, UT-based Extra Space Storage isn't done yet.

The company acquired 21 stores in the first quarter for $192 million. The company has closed or put under contract another 21 locations since the end of the quarter that total more than $262 million.

CEO Spencer Kirk said during the company's quarterly earnings call that he witnessed elevated deal flow during the first quarter. While the properties coming to market run the gamut in terms of quality, Kirk said they do have one thing in common.

"We see asset quality spanning the spectrum. The constant in all of this, prices are high, really high," Kirk said, "You can have crappy assets that we think are just way out of market, and you can have really nice assets, that even for us or the other REITs, are getting a bit too rich to transact."

### Looking for smart deals

That's in part due to the increasing number of buyers both in and out of the industry looking to deploy capital into the asset class.

"There is a lot of money chasing these assets," Kirk said.

Extra Space remains focused on "opportunities that make sense geographically and economically," Kirk said.

So far this year, the company has also purchased three facilities at certificate of occupancy for $32 million. It has four more C of O deals under contract for a total of $27.45 million. In addition, the company purchased three additional facilities at C of O as part of joint ventures. Six more are under contract for purchase via JV partners.



(https://www.sparefoot.com/self-storage/news/wp-content/uploads/sites/4/2016/04/stockbridge-e1461190636878.jpg)

A recently acquired Extra Space location in near Atlanta, GA.

### Strong start

Extra Space reported revenue during the first quarter of $229.4 million, an increase of 32.5 percent compared to last year. Profits hit $89.4 million during the quarter, up 52 percent.

Same-store performance was also strong: revenue climbed 9.1 percent and NOI up to 12.3 percent.

Performance was boosted by high same-store occupancy, ending the quarter at 92.8 percent—the highest first quarter ending occupancy in the company's history. At the same time rents charged at same-store locations rose an average of 7.5 percent to reach a total of $15.67 per square foot.

### Finding the sweet spot

Kirk said that the vast majority of Extra Space customers absorb rental rate increases without moving out.

"We are hitting the sweet spot," Kirk said regarding the company's rate increases on existing customers. Extra Space is able to raise rates on customers up to 10 percent with little pushback, he said.

"Let's be realistic about this. If you are renting a unit and you find out your rent is going up $15, you are not likely to rent a U-Haul truck, pack up your stuff, go down the street, unpack your stuff and return the truck just to save 15 bucks," Kirk said, "Most people won't go through the effort to do that."

Advertisement

1  Sabita J. Soneji (CA Bar No. 224262)
2  Tanya Koshy (CA Bar No. 277095)
   **TYCKO & ZAVAREEI LLP**
3  1970 Broadway, Suite 1070
   Oakland, CA 94612
4  Telephone: (510) 254-6808
   Facsimile: (202) 973-0950
5  ssoneji@tzlegal.com
6  tkoshy@tzlegal.com

7
   *Counsel for Plaintiffs and the Proposed Class*
8

9              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                         **COUNTY OF ALAMEDA**

11

12  LENAY JOHNSON AND LAMAR MOSLEY,          Case No. RG19004671
    individually and on behalf of themselves and all
13  others similarly situated,
                          Plaintiffs,          **PROOF OF SERVICE**
14
                     v.
15
    EXTRA SPACE STORAGE INC.,
16
                          Defendant.
17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Alameda, State of California. My business address is 1970 Broadway, Suite 1070, Oakland, CA 94612.

On March 25, 2019, I served true copies of the following document(s) described as:

- FIRST AMENED COMPLAINT

to the interested parties below:

Quyen L. Ta
BOIES SCHILLER FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
qta@bsfllp.com

*Attorney for Defendant Extra Space Storage, Inc.*

**[X] BY E-MAIL:** I transmitted a correct and true attachment of the document(s) to the email addresses listed above.

**[X] BY FIRST CLASS MAIL:** I enclosed a copy of the document(s) in a sealed envelope addressed as indicated above and deposited it with the United States Postal Service, first class postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

EXECUTED this 25th day of March 2019, in Oakland, CA.

*Chloe Noh*

**Chloe Hyunji Noh**

1  Quyen L. Ta (SBN 229956)
   Kathleen R. Hartnett (SBN 314267)
2  James A. Unger (SBN 325115)
   BOIES SCHILLER FLEXNER LLP
3  1999 Harrison Street, Suite 900
   Oakland, CA 94612
4  Telephone:     (510) 874-1000
5  Facsimile:     (510) 874-1460
   E-mail:        qta@bsfllp.com
6                 khartnett@bsllp.com
                  junger@bsfllp.com
7

ENDORSED
FILED
ALAMEDA COUNTY

APR - 4 2019

CLERK OF THE SUPERIOR COURT
By ___ MICHELLE BANKS ___
                        Deputy

8  *Attorneys for Defendant Extra Space Storage Inc.*

9

10              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11                         **COUNTY OF ALAMEDA**

12

13  LENAY JOHNSON and LAMAR MOSLEY,       Case No.  RG19004671
    individually and on behalf of themselves and
14  all other similarly situated,         **PROOF OF SERVICE**

15                      *Plaintiffs*,

16              vs.

17  EXTRA SPACE STORAGE INC.,

18                      *Defendant*.

19

20

21

22

23

24

25

26

27

28

                                    1

1

**PROOF OF SERVICE**

2

I, the undersigned, declare as follows:

3

    1.      I am employed in the County of Alameda, State of California.  I am over the age of

4

eighteen years and I am not a party to this action.  My business address is 1999 Harrison St., Suite

5

900, Oakland, CA 94612, in said County and State.

6

    2.      On April 4, 2019, I served

7

8

**STIPULATION TO EXTEND DEADLINES AND [PROPOSED] ORDER**

9

by providing a true copy thereof addressed to each of the persons named below as indicated below:

10

Sabita J. Soneji

11

Tanya Koshy

TYCKO & ZAVAREEI LLP

12

1970 Broadway, Suite 1070

Oakland, CA 94612

13

ssoneji@tzlegal.com

tkoshy@tzlegal.com

14

15

☑    <u>BY MAIL:</u>  I placed a true copy in a sealed envelope addressed as indicated
above, on the above-mentioned date.  I am familiar with the Firm's practice of

16

collection and processing correspondence for mailing.  It is deposited with the
U.S. Postal Service on that same day in the ordinary course of business.  I am

17

aware that on motion of party served, service is presumed invalid if postal
cancellation date or postage meter date is more than one day after date of

18

deposit for mailing in affidavit.

19

☐    <u>BY PERSONAL SERVICE:</u>  I placed a true copy in a sealed envelope
addressed to each person[s] named at the address[es] shown and giving same to

20

a messenger for personal delivery before 5:00 p.m. on the above-mentioned
date.

21

☑    <u>BY ELECTRONIC MAIL</u>

22

23

☐    <u>BY FACSIMILE:</u>  On the above-mentioned date, I served a copy of the above-
referenced documents [excluding exhibits] by facsimile transmission to the
person[s] at the number[s] indicated.

24

25

☐    <u>BY FEDERAL EXPRESS NEXT-DAY AIR</u>:  I placed a true copy in a sealed
envelope addressed as indicated above, on the above-mentioned date.  I am

26

familiar with the Firm's practice of collection and processing correspondence
for delivery by Federal Express.  Pursuant to that practice, envelopes placed for

27

collection at designated locations during designated hours are delivered to
Federal Express with a fully completed Airbill, under which all delivery

28

charges are paid by Boies, Schiller & Flexner LLP, that same day in the
ordinary course of business.

1

1

☑    (STATE)          I declare under penalty of perjury under the laws of the
2                                     State of California that the above is true and correct and that
                                      the foregoing document(s) were printed on recycled paper.
3

☐    (FEDERAL)       I declare that I am employed in the office of a member of
4                                     the bar of this court at whose direction the service was
                                      made.
5

6          Executed on April 4, 2019 at Oakland, California.

7
                                                By
8                                                    Ashleigh jensen

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

1   Quyen L. Ta (SBN 229956)
    Kathleen R. Hartnett (SBN 314267)
2   James A. Unger (SBN 325115)
    BOIES SCHILLER FLEXNER LLP
3   1999 Harrison Street, Suite 900
    Oakland, CA 94612
4   Telephone:    (510) 874-1000
    Facsimile:    (510) 874-1460
5   E-mail:       qta@bsfllp.com
                  khartnett@bsllp.com
6                 junger@bsfllp.com
7

8   *Attorneys for Defendant Extra Space Storage Inc.*
9

ENDORSED
FILED
ALAMEDA COUNTY

APR - 4 2019

CLERK OF THE SUPERIOR COURT
By ___MICHELLE BANKS___
                              Deputy

10          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11                  **COUNTY OF ALAMEDA**

12

13   LENAY JOHNSON and LAMAR MOSLEY,          Case No.  RG19004671
     individually and on behalf of themselves and
14   all other similarly situated,             **STIPULATION TO EXTEND DEADLINES
                                               AND [PROPOSED] ORDER**
15                  *Plaintiffs*,

16          vs.

17   EXTRA SPACE STORAGE INC.,

18                  *Defendant*.

19

20

21

22

23

24

25

26

27

28

STIPULATION TO EXTEND DEADLINES AND [PROPOSED] ORDER

Defendant Extra Space Storage, Inc. ("Defendant") and Plaintiffs Lamar Mosley, Lenay Johnson, and Alexandru Ionescu ("Plaintiffs"), through undersigned counsel, notify the Court of Defendant's intention to remove this action to federal court on or before April 24, 2019, and therefore stipulate and request the Court continue the Case Management Statement and Case Management Conference until after that date.

WHEREAS, the parties have met and conferred regarding Defendant's intention to remove this action to the United States District Court for the Northern District of California under the Class Action Fairness Act, 28 U.S.C. § 1332(d), on or before Defendant's April 24, 2019 deadline to answer or otherwise respond to the Complaint;

WHEREAS, the parties' deadline to submit a Case Management Statement in this action is currently April 8, 2019;

WHEREAS, the Case Management Conference in this action is currently set for April 23, 2019;

WHEREAS, Defendant does not waive, and expressly reserves, its right to assert all defenses including to move to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16;

WHEREAS, the parties wish to conserve judicial resources and streamline the case management process, and therefore respectfully submit that a Case Management Statement need not be filed and a Case Management Conference need not be held prior to April 24, 2019, given Defendant's intention to remove this action to federal court on or before that date;

///

STIPULATION TO EXTEND DEADLINES AND [PROPOSED] ORDER

1
2
3

      The Parties hereby STIPULATE and REQUEST that the Case Management Conference and the deadline for the parties to file a Case Management Statement, be continued until a date after April 24, 2019, and then only to occur to if this action is not removed on or before that date.

4   Dated:  April 4, 2019                             Respectfully submitted,

5

6

7   By:   _____

8   Quyen L. Ta (SBN 229956)
    BOIES SCHILLER FLEXNER LLP

9   1999 Harrison Street, Suite 900
    Oakland, CA 94612

10  Telephone: (510) 874-1000
    Facsimile:  (510) 874-1460

11  E-mail:     qta@bsfllp.com

12  *Attorneys for Defendant Extra Space Storage Inc.*

13  Dated:  April 4, 2019

14  By :   _____

15  Sabita J. Soneji
    TYCKO & ZAVAREEI LLP

16  1970 Broadway, Suite 1070
    Oakland, CA 94612

17  Telephone: (510) 254-6808
    Facsimile: (202) 973-0950

18  Email:      ssoneji@tzlegal.com

19  *Attorneys for Plaintiffs Johnson and Mosley*

20

21

22

23

24

25

26

27

28

STIPULATION TO EXTEND DEADLINES AND [PROPOSED] ORDER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[PROPOSED] ORDER**

Good cause shown, the Court hereby ORDERS that if this action is not removed to federal court on or before April 24, 2019, the Case Management Statement will be due on _____, 2019.  The Case Management Conference would be held on _____, 2019.


DATED:  _____                    _____
                                                                              Hon. Brad Seligman
                                                                              Judge of the Superior Court

STIPULATION TO EXTEND DEADLINES AND [PROPOSED] ORDER

Tycko & Zavareei LLP
Attn:  Soneji, Sabita J
1970 Broadway
#1070
Oakland, CA   94612

Boies Schiller Flexner LLP
Attn:  Ta, Quyen L.
1999 Harrison Street
Suite 900
Oakland, CA   94612____

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

Johnson

Plaintiff/Petitioner(s)

VS.

Extra Space Storage Inc.

Defendant/Respondent(s)
(Abbreviated Title)

No. RG19004671

Application Re: Other Ex Parte
Granted

IT IS ORDERED that the Defendant's Application Re: Other Ex Parte is granted. the 4/23 CMC is continued to 5/7/2019 at 3 pm. CMC statements to be filed 5 court days before hearing.

Dated:  04/15/2019

Judge Brad Seligman