**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ALEXANDRU IONESCU, ET AL.,**<br>Plaintiffs,<br>vs.<br>**EXTRA SPACE STORAGE INC.,**<br>Defendant. | CASE NO. 19-cv-02226-YGR<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br>Re: Dkt. No. 11 |

Plaintiffs Alexandru Ionescu, Lenay Johnson, and Lamar Mosley bring this putative class-action law suit against defendant Extra Space Storage Inc. ("Extra Space") for false advertising in violation of California Business and Professions Code Section 17500 (Count I), unfair competition in violation of Section 17200 (Count II), and violations of the California Consumers Legal Remedies Act ("CLRA") (Count III). (Dkt. No. 1-1 at ECF 50-63 ("ACAC.") ¶¶ 64-78.) Specifically, plaintiffs allege that Extra Space "engage[d] in a deceptive bait-and-switch scheme" in which "[i]t lures consumers into leasing Extra Space's storage units by advertising competitive rental rates, while hiding the fact that it will hike up those rental rates shortly after consumers have signed leases." (*Id.* ¶ 1.) Defendant removed the case to this Court on April 24, 2018. (Dkt. No. 1 ("Removal").)

Now before the Court is defendant's motion to compel arbitration and dismiss the complaint. (Dkt. No. 11 ("Motion").) Having carefully considered the pleadings and the papers submitted, as well as oral argument from counsel on July 9, 2019, and for the reasons set forth more fully below, the Court **GRANTS** defendant's motion to compel arbitration.

\\

\\

## I. BACKGROUND

As noted, the ACAC asserts class claims against Extra Space for allegedly engaging in false advertising, unfair competition, and violating the CLRA. (ACAC. ¶ 9.) The ACAC defines the putative class as follows:

> All persons residing in the United States who signed leases for storage units in California from Extra Space Storage from January 28, 2015 to present.

(*Id.* ¶ 56.) Plaintiffs Ionescu, Johnson, and Mosley each rented a storage unit from Extra Space in California. (*See id.* ¶¶ 33, 41, 50.)

Plaintiffs allege as follows: Extra Space advertises competitive rental rates for its storage units to entice consumers to sign leases, but these "rental rates are false promises." (*Id.* ¶¶ 18, 19.) Extra Space represents on its website and in person that it increases rental rates "in order to keep up with the rising costs associated with providing top-notch service and a clean, secure facility." (*Id.* ¶ 19.) However, once a consumer signs a lease, Extra Space increases the rate within months, irrespective of any "rising costs," while continuing to advertise the same-size unit for the lower rate to other consumers. (*Id.* ¶ 20.) Because Extra Space continues to advertise the lower rate for the same-size unit, "it is apparent that Extra Space's frequent rental rate increases are not based on 'rising costs.'" (*Id.* ¶ 21.) Extra Space knows that by the time its deceptive "bait-and-switch" scheme is revealed, consumers have already invested the time, effort, and money to pack, transport, and store their belongings, and are unlikely to move. (*Id.* ¶ 22.) Extra Space also requires consumers who rent storage units to obtain insurance and pay a one-time, non-refundable administration fee, making it even less likely that consumers will move their belongings to another company's storage facility. (*Id.* ¶ 23.)

Defendant Extra Space now moves to compel plaintiffs into arbitration based upon the rental agreements each plaintiff signed ("Rental Agreements").[1] (Motion.) The Rental Agreements each contained an "Agreement to Arbitrate" provision in which plaintiffs are

---

[1] In support thereof, defendant submits those rental agreements on the grounds that plaintiffs have incorporated the agreements into their complaint by reference because the ACAC references plaintiffs' "leases." (Motion at 1 n.1 (citing ACAC ¶¶ 32, 52, 56, 60, 66, 69, 79).) Plaintiffs do not contest this incorporation.

2

designated as "Customers," and Extra Space as the "Operator." It provides:

> Agreement to Arbitrate: By initialing below, Customer agrees that, pursuant to the Arbitration Provision on the Addendum to Agreement, either Customer or Operator may elect to resolve any dispute by neutral, binding arbitration, on an individual basis only, and not by a court action, subject to the exceptions and terms set forth in the Arbitration Provision. Please refer to the Arbitration Provision for additional information concerning the agreement to arbitrate. Customer acknowledges that he/she had the option of entering into an Agreement without an Arbitration Provision, but voluntarily chose to enter into an Agreement with an Arbitration Provision.

(*See e.g.*, Dkt. No. 1-1, Ex. 3 ("Ionescu Agreement") ¶ 31.)

Immediately below this language, the Rental Agreements presented plaintiffs with the choice of agreeing to arbitration, by marking an "X" in front of one of two options: (1) "Customer agrees to the Arbitration Provision" or (2) "Customer refuses the Arbitration Provision." (*Id.*) Plaintiffs were also required to initial after selecting their arbitration option. (*Id.*) All three plaintiffs placed an "X" in front of the option that stated, "Customer agrees to the Arbitration Provision" and provided his or her initials. (*Id.*)

The "Arbitration Provision," to which this language cross-references, is attached to the Rental Agreement as a separate addendum entitled "Arbitration Provision." (*Id.* at ECF 14.) At the top of the page, it reads "THIS DOCUMENT WILL BE MADE PART OF YOUR RENTAL AGREEMENT" in bold lettering. (*Id.*) The Arbitration Provision reads, in relevant part:

> (1) Except as provided below, Owner and Occupant agree to arbitrate all Claims between Owner and Occupant.
> (2) "Claims" are any claims or controversies, at law or in equity, against each other related in any way to or arising out of in any way to this Rental Agreement, the Occupant's use or occupancy of the Space and this Property or any claims of bodily injury or property damage, or the enforcement of any remedy under any law, ordinance, statute or regulation, even if arises after the Agreement has terminated. "Claims" include, but are not limited to, claims related in any way to or arising out of in any way to any aspect of the relationship between Owner and Occupant, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory. "Claims" also include such claims that Occupant brings against Owner's employees, agents, parents, subsidiaries, affiliates, or other representatives or that Owner brings against Occupant.
> (3) Unless Occupant and Owner each agree otherwise, the Arbitration will be conducted by a single, neutral third party arbitrator. OWNER AND OCCUPANT WAIVE THEIR RIGHT TO TRIAL BY JURY OR IN A COURT. The party initiating the arbitration shall select the arbitration organization, subject to the other party's agreement to use such arbitration

3

       organization, which shall not unreasonably be withheld. Unless otherwise agreed, the arbitration shall take place within the County where the defendant/respondent resides. The applicable rules of the arbitration organization will govern the arbitration.
- (5) OWNER AND OCCUPANT AGREE THAT THEY WILL ONLY PURSUE ARBITRATION ON AN INDIVIDUAL BASIS AND WILL NOT PURSUE ARBITRATION OR ANY OTHER CLAIM ON A CLASS-WIDE, REPRESENTATIVE, OR CONSOLIDATED BASIS. OWNER AND OCCUPANT ALSO AGREE THAT THEY WILL NOT PARTICIPATE AS A MEMBER OF A CLASS, AS A CLASS REPRESENTATIVE, OR IN A CONSOLIDATED ACTION.
- (6) The right to arbitration under this Arbitration Provision is protected by, and any arbitration shall be governed by, the Federal Arbitration Act (9 U.S.C. § 1 *et seq*.). The Owner and Occupant agree that the Owner's business and the relationship here involve interstate commerce.
- (7) Claims Not Subject to Arbitration. Either Owner or Occupant may bring Claims in small claims court. Either Owner or Occupant may pursue the self-help and other remedies and defenses provided in Business and Professions Code section 21700, *et seq*. However, this exception does not include Claims that are derivative or based on violations of Business and Professions Code section 21700 *et seq.*, including without limitation Claims for violation of Business and Professions code section 17200 *et seq.*, conversion, negligence, breach of contract, and other violations of state or federal law; any such Claims shall be subject to arbitration under the terms of this Arbitration Provision unless brought in small claims court.

(*Id.*)

## II.    LEGAL STANDARD

As the Supreme Court has repeatedly noted, the Federal Arbitration Act ("FAA") expresses an "emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi*, 132 S. Cot 23, 25 (2011); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985); *Preston v. Ferrer*, 552 U.S. 346, 349 (2008) (the FAA "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution"). To further this policy, the FAA permits a party to a written agreement for arbitration to petition a United States district court for an order compelling the parties to arbitration pursuant to the terms of their agreement. 9 U.S.C. § 4. Accordingly, and as noted by the Ninth Circuit, courts must "place arbitration provisions 'on the same footing' as all other contractual provisions," and "ensur[e] that private arbitrations are enforced." *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1159 (9th Cir. 2013); *see e.g., Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719-20 (9th Cir. 1999). This "liberal federal policy favoring arbitration agreements" applies "notwithstanding

any state substantive or procedural policies to the contrary." *AT&T Mobility LLC v. Conception*, 131 S. Ct. 1740, 1749 (2011).

A court reviewing a petition to compel arbitration should determine "(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). When an arbitration provision satisfies these conditions, the FAA "mandates that district courts shall direct the parties to proceed to arbitration." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 212, 218 (1985) (citing 9 U.S.C. §§ 3, 4).

### III. ANALYSIS

Plaintiffs do not dispute that the FAA applies. (Dkt. No. 14 ("Opp.").) Instead, plaintiffs contend that the Arbitration Provision, and therefore the Agreement to Arbitrate, are invalid and unenforceable under California law because the provision precludes consumers from bringing claims for public injunctive relief in any forum, including arbitration, in violation of the California Supreme Court's decision in *McGill v. Citibank, N.A.* (*Id*. (citing 2 Cal.5th 945 (2017)).) During oral argument on July 9, 2019, plaintiffs conceded that in the event that the Court found that they could "achieve public injunctive relief in arbitration[,]" they would not "have any other basis for being in this [C]ourt[.]" (Dkt. No. 25 ("Hearing Tr.") 10:25-11:4.) Therefore, the only issue presented by defendant's motion is whether the Arbitration Provision violates the *McGill* Rule.

Plaintiffs argue to the Arbitration Provision's requirement that all "claims" be brought to arbitration, when read in conjunction with the provision's prohibition on pursuing relief on behalf of any other person, "eliminates [p]laintiffs' ability to seek public injunctive relief *anywhere*." (Opp. at 6 (emphasis in original).) Whether *McGill* applies turns on the latter, the prohibition on pursuing relief on behalf of any other person, which reads as follows:

> OWNER AND OCCUPANT AGREE THAT THEY WILL ONLY PURSUE ARBITRATION ON AN INDIVIDUAL BASIS AND WILL NOT PURSUE ARBITRATION OR ANY OTHER CLAIM ON A CLASS-WIDE, REPRESENTATIVE, OR CONSOLIDATED BASIS. OWNER AND OCCUPANT ALSO AGREE THAT THEY WILL NOT PARTICIPATE AS A MEMBER OF A CLASS, AS A CLASS REPRESENTATIVE, OR IN A CONSOLIDATED ACTION.

(Ionescu Agreement at ECF 14.)

5

Specifically, plaintiffs contend that the prohibition of plaintiffs proceeding in arbitration on any sort of "representative" basis that "does not contain a carveout for actions seeking injunctive relief on behalf of the general public as contemplated by the UCL, CLRA, and FAL" violates the *McGill* Rule. (Opp. at 5-6.) Defendant replies that this agreement does not fall within the *McGill* Rule because unlike the arbitration provision at issue in *McGill*, the Provision here does not "preclude[] the arbitrator from issuing any *relief* beyond the individual claimant at issue in the case." (Dkt. No. 19 ("Reply") at 7 (emphasis in original).) The Court agrees.

The arbitration agreement at issue in *McGill* reads as follows:

> Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. *The arbitrator will not award relief for or against anyone who is not a party.* If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court.

*McGill*, 2 Cal.5th at 952 (emphasis supplied). The California Supreme Court in *McGill* did "not independently analyze the arbitration provision" and instead "proceed[ed] based on the parties' shared view that [the arbitration provision] purports to preclude McGill from seeking public injunctive relief in arbitration, in court, or *in any forum*[.]" *Id.* at 956 (emphasis in original). Nonetheless, the language indicating that "[t]he arbitrator will not award relief for or against anyone who is not a party" has been found to violate the *McGill* rule. *See Adkins v. Comcast Corporation*, No. 16-cv-05969-VC, 2018 WL 4846548, at *1 (N.D. Cal. Feb. 15, 2018) ("The arbitrator may award relief only in favor of the individual party seeking relief . . . . The arbitrator may not award relief for or against anyone who is not a party."); *Blair v. Rent-A-Center, Inc.*, No. C 17-02335 WHA, 2017 WL 4805577, at * (N.D. Cal. Oct. 25, 2017) ("In the event that a party elects to arbitrate . . . the agreement . . . provided . . . that the arbitrator was prohibited from 'award[ing] relief that would

6

affect RAC account holders other than [the customer.]'").

Plaintiffs argue that the provision here violates *McGill* because it states that signatories to the agreement "will only *pursue* arbitration on an individual basis and will not *pursue* arbitration or any other claim on a class-wide, representative, or consolidated basis[.]" (*See* Opp. at 5-6 (emphasis supplied).) The focus on the word "pursue" to demonstrate a violation of the *McGill* rule does not persuade. That the Arbitration Provision prohibits plaintiffs from proceeding "on a representative basis, surely an arbitrator cannot award representative relief[,]" does not mean that an arbitrator cannot award injunctive relief benefiting the public at large. As *McGill* itself makes clear, an action seeking public injunctive relief is not a "representative action." *McGill*, 2 Cal.5th at 959-61; *see also Magana v. DoorDash, Inc.*, 343 F.Supp.3d 891, 901 (N.D. Cal. 2018). Therefore, the presence of a class action waiver, like the one present here, does not, without more, violate the *McGill* Rule. *See Magana*, 343 F.Supp.3d at 901; *Lee v. Postmates Inc.*, No. 18-cv-03421-JCS, 2018 WL 4961802, at \*9 (N.D. Cal. Oct. 15, 2018); *Trout v. Comcast Cable Communications, LLC*, No. 17-cv-01912-RS, 2018 WL 4638705, at \*4 (N.D. Cal. Mar. 15, 2018). Moreover, the Arbitration Provision specifically contemplates claims for violation of California Business and Professions Code Section 17200, the same claim that plaintiffs assert forms the basis for their claim for public injunctive relief. (*See* Ionescu Agreement at ECF 14 (noting that Section 17200 claims "shall be subject to arbitration under the terms of this Arbitration Provision"); Opp. at 4.)

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendant's motion to compel arbitration.

\\

7

This Order terminates Docket Number 11.

**IT IS SO ORDERED.**

Dated: August 23, 2019

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**